1
2
3
4
5
6

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

7
8

| | | |
|---|---|---|
| **MARGARETE CHENOWETH,** and **DAVID CHENOWETH,** | ) ) ) | CAUSE NO.: 2:16-CV-01928 |
| Plaintiffs, | ) ) | COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF |
| v. | ) ) ) | |
| **HMR FUNDING, LLC; DEAN CHASE; MARK GUEDRI; MKL SERVICES LLC** d/b/a **BRIGHTSTAR CARE OF NORTH SEATTLE; CHC SERVICES, LLC; TRANSAMERICA MEDICAL ASSISTANCE, LLC,** | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

9
10
11
12
13
14
15
16

17    Come the Plaintiffs, Margarete Chenoweth and David Chenoweth, by and through

18    their attorneys, and for their causes of action against the Defendants, state:

## I.   INTRODUCTION

19

20    On April 15, 2013, at approximately 3:10 p.m. Plaintiff Margarete Chenoweth was

21    severely injured in a bicycle wreck on Forest Avenue, SE in the City of Mercer Island, Wash-

22    ington.  As a direct and proximate result of the bicycle wreck, Ms. Chenoweth sustained a

23    paralyzing spinal cord fracture, rendering her a permanent tetraplegic.  Ms. Chenoweth filed

24    suit against the City of Mercer Island for injuries she sustained because of the bicycle wreck.

25    While the suit against the City of Mercer Island was pending, Ms. Chenoweth received med-

26    ical and other litigation funding from several companies.  One of these companies, HMR

**THE SULLIVAN LAW FIRM**
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 1

Funding, LLC ("HMR" or "HMR Funding"), directly advanced some funds less fees to the Chenoweths and paid medical providers for Ms. Chenoweth's medical care while the suit was pending.  HMR directly paid medical providers, MKL Services LLC d/b/a BrightStar Care of North Seattle ("MKL" or "MKL Services") and CHC Services, LLC ("CHC" or "CHC Services") for medical care that they provided for Ms. Chenoweth.  The total amount of funding that HMR Funding allegedly provided to, and on behalf, of the Chenoweths was $839,699.96.  The Chenoweths and the City of Mercer Island settled the lawsuit for $7,250,000.00.  The Chenoweths settled the lawsuit against the City of Mercer Island during the trial due to the funding abuse, fraud and other matters regarding the amount of money that was claimed by HMR to be owed to HMR for care and other funding as it would substantially and detrimentally affect her case.

From November 2014, to July, 2016, HMR conspired and committed mail and wire fraud against the Chenoweths.  From December 1, 2014 to February 15, 2015 MKL Services conspired and committed mail and wire fraud against the Chenoweths.  From February 10, 2015 to July 20, 2016 CHC Services conspired and committed mail and wire fraud against the Chenoweths.  The medical providers submitted inflated invoices to HMR, and then HMR only paid the medical providers a small percentage of the amount of the invoices, i.e. between 38 percent and 40 percent to medical care and home care providers.  HMR then fraudulently claimed liens against the Chenoweths for the full amount of the medical providers' invoices by simply purchasing the claimed liens for care provided by the medical providers.  HMR repeatedly denied the Chenoweths' requests to view the medical providers' invoices or any billing records that would reflect the true cost or value of any services provided.  HMR Funding, MKL Services, and CHC Services conspired to and committed mail and wire fraud against the Chenoweths from November, 2014 to July, 2016.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 2 OF 72

## II. JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964(c) with respect to the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") claims and pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction) with respect to the state law claims.

2.     The court has personal jurisdiction over each Defendant, which is either a resident of or has done business in King County, Washington.

3.     Venue is proper in this court because: (1) pursuant to 28 U.S.C. § 1391(b)(2), a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and (2) pursuant to 28 U.S.C. § 1391(b)(3), all of the Defendants did business with the Chenoweths in King County and are thus subject to the Court's personal jurisdiction.

## III.    PARTIES

4.     Plaintiffs Margarete and David Chenoweth are residents of Mercer Island, King County, Washington.

5.     Defendant HMR Funding is a Delaware limited liability company with its principal place of business in Midlothian, Virginia, but conducts business throughout the United States.  HMR Funding is a limited liability company that provides medical litigation and other funding to plaintiffs in personal injury lawsuits.  HMR Funding directly loans money to their clients, as well as pays medical providers to provide medical and home care to their clients.  HMR Funding is a culpable person.

6.     Defendant MKL Services d/b/a Bright Star of North Seattle is a Washington limited liability company with its principal place of business in Edmonds, Washington. MKL Services provides home health care to children and adults in Washington.  MKL Services also provides companion care services and nursing care to children and adults.  MKL Services is a culpable person.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504

1    7.    Defendant CHC Services is a Washington limited liability company with its

2 principal place of business in Washington.  CHC Services provides comprehensive home

3 health and in-home care and companion services to individuals in Washington.  CHC Ser-

4 vices is a culpable person.

5    8.    Defendant TransAmerica Medical Assistance, LLC ("TransAmerica") is a

6 Texas limited liability company with its principal place of business in Texas.  TransAmerica

7 provides medical services to individuals.  TransAmerica is a culpable person.

8    9.    Dean Chase ("Chase") is an individual residing in Texas.  Defendant Chase is

9 the Chief Marketing officer of Defendant HMR Funding and was actively engaged in the

10 activities at issue in this suit. Defendant Chase is a culpable person.

11    10.    Defendant Mark Guedri ("Guedri") is a resident of Virginia.  Guedri is the

12 CEO and a Director of HMR Funding and was actively engaged in the activities at issue in

13 this suit. Defendant Guedri is a culpable person.

14 **IV. FACTUAL ALLEGATIONS COMMON TO ALL RICO CAUSES OF ACTION**

15    11.    Defendant Mark Guedri is a Director of TransAmerica.

16    12.    Upon information and belief, Defendant Guedri, acting as the Chief Executive

17 Officer of HMR Funding, authorized an agent to sign on Mark Guedri's behalf a Lien and

18 Receivables Purchase and Assignment Agreement between CHC Services and HMR Fund-

19 ing on February 10, 2015.

20    13.    Defendants Chase and Guedri purposefully directed and committed acts in

21 the State of Washington by designing and conducting a fraudulent scheme against the

22 Chenoweths, who are residents of the State of Washington.

23    14.    Upon information and belief, Defendant Guedri intentionally directed, au-

24 thorized and participated in the scheme against the Chenoweths by signing a Lien and Re-

25 ceivables Purchase and Assignment Agreement on November 24, 2014 between MKL Ser-

26 vices and HMR Funding to be performed in this forum (State of Washington).

**THE SULLIVAN LAW FIRM**
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

Complaint for Damages and Injunctive Relief - 4 of 72

15.     These activities by Defendants Guedri and Chase consummated the transaction in this forum (State of Washington) and purposely availed themselves of this forum by directing, authorizing or otherwise conducting activities in this forum (State of Washington) and purposely availed themselves and their entities, namely HMR Funding and TransAmerica, thereby invoking the jurisdiction of Washington's courts.

16.     Defendants Chase and Guedri knew that the Chenoweths were residents of the State of Washington, and that MKL Services and CHC Services would be providing medical services to Ms. Chenoweth in Washington.

17.     Defendants Chase and Guedri knew the harm of the fraudulent scheme directed into Washington would be suffered in Washington because the Chenoweths were residents of Washington, and Ms. Chenoweth would be receiving medical services from MKL Services and CHC Services in Washington.

18.     This claim arises out of or relates to the Defendants' forum-related activities including the conduct of the fraud in the State of Washington.

19.     It is reasonable and necessary for the State of Washington to exercise jurisdiction over Defendants Chase and Guedri due to the fraud that occurred in this State because of their activities here and the actions of the entities that they directed in Washington, including, HMR Funding and TransAmerica. The courts situated in the state of Washington have a substantial interest in protection of Washington citizens from fraud.

20.     Defendant Guedri engaged in particularly damaging conduct by executing the Lien and Receivables Purchase and Assignment Agreement between MKL Services and HMR Funding which was used in furtherance of the scheme to commit wire fraud and mail fraud against the Chenoweths.

21.     Upon information and belief, Defendant Guedri engaged in particularly damaging conduct by authorizing an agent to sign on Mark Guedri's behalf the Lien and Receiv-

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 5 OF 72

1    ables Purchase and Assignment Agreement between CHC Services and HMR Funding be-

2    cause this Agreement was used in furtherance of the scheme to commit wire fraud and mail

3    fraud against the Chenoweths.

4          22.    Defendant Guedri engaged in particularly damaging conduct by executing

5    and authorizing these Agreements because without these Agreements, MKL Services and

6    CHC Services would not have provided medical services to Ms. Chenoweth and the Cheno-

7    weths would not have been defrauded.

8          23.    HMR Funding is a culpable person for RICO purposes because it is a Dela-

9    ware corporation that is capable of holding a legal interest in property.

10         24.    MKL Services is a culpable person for RICO purposes because it is a limited

11   liability company that is capable of holding a legal interest in property.

12         25.    CHC Services is a culpable person for RICO purposes because it is a limited

13   liability company that is capable of holding a legal interest in property.

14         26.    TransAmerica is a culpable person for RICO purposes because it is a limited

15   liability company that is capable of holding a legal interest in property.

16         27.    Defendant Chase is a culpable person for RICO purposes because he is capa-

17   ble of holding a legal interest in property.

18         28.    Defendant Guedri is a culpable person for RICO purposes because he is capa-

19   ble of holding a legal interest in property.

20         29.    HMR Funding is an enterprise for RICO purposes because it is a Delaware

21   limited liability company.

22         30.    MKL Services is an enterprise for RICO purposes because it is a Washington

23   limited liability company.

24         31.    CHC Services is an enterprise for RICO purposes because it is a Washington

25   limited liability company.

26

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504

32.    TransAmerica is an enterprise for RICO purposes because it is a Texas limited liability company.

33.    HMR Funding is a litigation funding limited liability company with its principal place of business in Virginia that is involved in interstate commerce because it lends money to, funds expenses and conducts its enterprise operation with individuals in multiple states, including the Chenoweths, in Washington as well as with Plaintiffs' attorneys in Florida, Georgia, Virginia, Texas, Maryland, Kansas and upon information and belief conducts interstate commerce or affects interstate commerce by conducting business from its offices in Texas and Virginia in numerous other states of the United States including those set forth above.

34.    HMR Funding was involved in interstate commerce because the mail and wire fraud it committed against the Chenoweths occurred in Washington, Texas and Virginia and, thus, affected interstate commerce.

35.    MKL Services was involved in interstate commerce because the mail and wire fraud against the Chenoweths occurred in Washington, Texas and Virginia and, thus, affected interstate commerce.

36.    CHC Services was involved in interstate commerce because the mail and wire fraud against the Chenoweths occurred in Washington, Texas and Virginia and, thus, affected interstate commerce.

37.    TransAmerica was involved in interstate commerce because the mail and wire fraud against the Chenoweths occurred in Washington, Texas and Virginia and, thus, affected interstate commerce.

38.    Defendant Chase was involved in the scheme at issue by: (1) promoting HMR's litigation funding at Plaintiff's lawyer's seminars; (2) authoring the memo, "Case Strategies for Personal Injury Cases Where Plaintiff has Inadequate Health Insurance or is Denied Coverage", and distributing this memo to promote and market HMR Funding's

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 7 OF 72

1  fraudulent schemes; (3) meeting with Plaintiffs and the other Defendants to promote HMR
2  Funding's fraudulent scheme at issue in this action; and (4) participating in the inflated
3  billing scheme at issue in this action.

4      39.    HMR Funding committed a pattern of racketeering activity against the
5  Chenoweths for a period of twenty months from November 24, 2014 until July 20, 2016.

6      40.    HMR Funding committed acts of mail and wire fraud against the Chenoweths
7  which were related and continuous in order to defraud them.

8      41.    HMR Funding's, Chase's and Guedri's acts of mail and wire fraud involved in
9  this case were all related as the acts had one purpose which was to defraud the Chenoweths
10 by the use of fraudulently inflated invoices which HMR purchased from MKL Services and
11 CHC Services while knowing that they were false and fraudulent.

12     42.    The participants in this fraudulent venture, HMR Funding, Chase, Guedri,
13 MKL Services, CHC Services and TransAmerica were involved in the same or a similar
14 fraudulent scheme of vulnerable victims such as the Plaintiffs herein, the Chenoweths, who
15 were similar in that these companies regularly prey upon those who are in need of their
16 assistance the most and the fraudulent acts were similar because all of the defendants used
17 fraudulent invoices which overstated the amount of services or goods provided, the cost of
18 services or goods provided or both solely with the intent of defrauding the Chenoweths.

19     43.    HMR Funding committed a closed-ended pattern of racketeering activity
20 against the Chenoweths for a period of twenty months from November 24, 2014 until July
21 20, 2016.

22     44.    In addition, HMR Funding committed an open-ended scheme of racketeer-
23 ing activity against other customers by perpetrating mail and wire fraud against them dur-
24 ing the same time it was defrauding the Chenoweths, and it continues to commit racketeer-
25 ing activities, including mail and wire fraud, against customers with no intention of chang-
26 ing its normal business activities.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 8 OF 72

45.     MKL Services committed a closed-ended pattern of racketeering activity against the Chenoweths for a period of over two months from December 7, 2014 until February 15, 2015.

46.     In November 2014, Defendants Chase, HMR Funding (by and through Chase), and MKL Services met with Ms. Chenoweth in Mercer Island, Washington.  Before the meeting and unknown to Ms. Chenoweth, HMR Funding and MKL Services had earlier agreed to the following terms:  (1) MKL would send invoices to HMR for services to be provided to Ms. Chenoweth at an agreed weekly rate, which rate would reflect a substantially inflated upcharge above the actual charge of such services; (2) HMR would pay MKL an amount which was 40 percent of the amount of MKL's inflated invoice; and, (3) HMR would issue a Lien against the Chenoweths' recovery in the amount of the inflated invoice. This prior agreement was kept secret from Ms. Chenoweth when Defendants Chase, HMR, and MKL met Ms. Chenoweth to solicit her to sign agreements with them, and was also kept secret from Ms. Chenoweth and her lawyers at all subsequent times. Based on these Defendants' representations (and their failure to disclose their secret billing scheme), Ms. Chenoweth agreed to utilize MKL's services and executed the documents Defendants presented to her.

47.     CHC Services committed a closed-ended pattern of racketeering activity against the Chenoweths for a period in excess of sixteen months from February 5, 2015 until June 9, 2016.

48.     TransAmerica committed a closed ended pattern of racketeering activity against the Chenoweths for ten months from November 1, 2014 through August 31, 2015.

49.     HMR Funding committed wire and mail fraud which constitute racketeering activity against the Chenoweths from November 16, 2014 until July 20, 2016.

50.     On November 24, 2014, HMR Funding and MKL Services entered into a Lien and Receivables Purchase and Assignment Agreement which stated that HMR Funding

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504

1   would reimburse MKL Services an amount equal to 40 percent of claimed cost of the med-

2   ical services that MKL Services provided Ms. Chenoweth.  Attached hereto and incorporated

3   by reference herein as **Exhibit A** to this Complaint is a true and correct copy of the Lien and

4   Receivables Purchase and Assignment Agreement which provides for such 40 percent pay-

5   ment.

6        51.    Each and every one of the invoices from MKL Services to the Chenoweths

7   were purposely substantially inflated above the cost of normal services as it was their intent

8   to participate in the fraud so that even when being paid at the rate of 40 percent, MKL Ser-

9   vices was being paid equal to or more than the normal and reasonable cost of the services

10  provided to and for the benefit of the Chenoweths and would provide MKL Services with

11  profitable work with which to fund its operation and allow HMR Funding to continue its

12  fraudulent practices.  Further, the total bill would allow HMR to receive large sums on the

13  fraudulent invoices.

14       52.  The inflated invoices were then assigned to HMR Funding who claimed that

15  this was the amount due for medical services rendered even though HMR Funding knew

16  that the amounts collected were excessive, and unreasonable charges for the goods or ser-

17  vices rendered and, further knew that the amounts charged by HMR were substantially in-

18  flated contrary to their representations to the Plaintiffs.  Further, **Exhibit A** provides that

19  (1) HMR's lien "shall be equal to the gross billed charges", i.e. the medical provider's charges

20  would be inflated substantially; and (2) the terms of their Agreement would be kept confi-

21  dential and could not be disclosed to anyone, including to Ms. Chenoweth or to her lawyer.

22  As such, this document was thus used as the basis to commit wire fraud and mail fraud

23  against the Chenoweths.

24       53.    On November 29, 2014, MKL Services and Ms. Chenoweth entered into a

25  Service Agreement for medical services that was used in furtherance of the scheme to com-

26  mit wire fraud and mail fraud against the Chenoweths.  Attached hereto and incorporated

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 10 OF 72

by reference herein as **Exhibit B** to this Complaint is a true and correct copy of the Service Agreement.

54.     On December 7, 2014, MKL Services mailed or e-mailed a fraudulent invoice, Invoice Number IVCR0000002212316, for $12,180.00 to HMR Funding which overstated the medical and home health services provided or overstated the value of the medical services that MKL Services provided Ms. Chenoweth from December 1, 2014 through December 7, 2014, or both.

55.     On December 21, 2014, MKL Services mailed or e-mailed a fraudulent invoice, Invoice Number IVC00000002221571, for $11,985.00 to HMR Funding which overstated the medical and home health services provided or overstated the value of the medical services that MKL Services provided Ms. Chenoweth from December 8, 2014 through December 14, 2014 or both.

56.     On January 28, 2015, TransAmerica and Ms. Chenoweth entered into an Assignment Agreement which was used as the basis to commit wire fraud and mail fraud against the Chenoweths.  Attached hereto and incorporated by reference herein as **Exhibit C** to this Complaint is a true copy of that agreement.

57.     On January 29, 2015, TransAmerica either mailed, emailed or faxed a fraudulent Health Insurance Claim Form for $19,902.01 to HMR Funding, 9211 Forest Hill Avenue, Suite 101, Richmond, VA 23235 which overstated for the proper charge for the value of a TS8060-RT-29 Twin Size Medical Mattress for Ms. Chenoweth.  Further, the bed was returned and was to be credited but is now shown on the Notice of Lien as part of the charges from TransAmerica Medical Assistance, i.e. $30,000.00 plus $19,902.01 for a total bill of $49,902.01 alleged to be due to TransAmerica.

58.     In February 2015, Defendants Chase, HMR Funding (by and through Chase), and CHC Services met with Ms. Chenoweth in Mercer Island, Washington.  Before the meeting and unknown to Ms. Chenoweth, HMR Funding and CHC Services had earlier

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 11 OF 72

1   agreed to the following terms:  (1) CHC would send invoices to HMR for services to be pro-

2   vided to Ms. Chenoweth at an agreed weekly rate, which rate would reflect a substantially

3   inflated upcharge above the actual charge of such services; (2) HMR would pay CHC an

4   amount which was 40 percent of the amount of CHC's inflated invoice; and (3) HMR would

5   issue a Lien against the Chenoweths' recovery in the amount of the inflated invoice. This

6   prior agreement was kept secret from Ms. Chenoweth when Defendant Chase, HMR, and

7   CHC met Ms. Chenoweth to solicit her to sign agreements with them, and was also kept

8   secret from Ms. Chenoweth and her lawyers at all subsequent times. Based on these Defend-

9   ants' representations (and their failure to disclose their secret billing scheme), Ms. Cheno-

10  weth agreed to utilize CHC's services and executed the documents Defendants presented to

11  her.

12        59.    On or about February 5, 2015, CHC Services received an Assignment Agree-

13  ment between CHC Services and Ms. Chenoweth that was used as the basis to commit wire

14  fraud and mail fraud against the Chenoweths.  A true copy of this agreement is attached

15  hereto as **Exhibit D**.  In the same manner as the **Exhibit A** agreement between HMR Fund-

16  ing and MKL Services, this document was also the basis to commit mail and wire fraud

17  against the Chenoweths.

18        60.    On February 8, 2015, MKL Services either mailed or e-mailed a fraudulent

19  invoice, Invoice Number IVCRR000002286716, for $9,975.00 to HMR Funding which

20  overstated the medical and home health services provided or overstated the value of the

21  medical services that MKL Services provided Ms. Chenoweth by MKL Services from De-

22  cember 15, 2014 through December 21, 2014.

23        61.    On February 8, 2015, MKL Services mailed or e-mailed a fraudulent invoice,

24  Invoice Number IVCR0000002286739, for $6,550.00 to HMR Funding which overstated

25

26

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

1   the medical and home health services provided or overstated the value of the medical ser-

2   vices that MKL Services provided Ms. Chenoweth by MKL Services from December 22,

3   2014 through December 28, 2014.

4         62.     On February 9, 2015, CHC Services either emailed or mailed a fraudulent in-

5   voice, Invoice Number 274280, for $35,200.00 to HMR Funding for a security deposit the

6   purpose of which is unknown in regard to a security deposit but, certainly, overstated the

7   value of services that CHC Services provided Ms. Chenoweth.

8         63.     On February 10, 2015, CHC Services and HMR Funding entered into a Lien

9   and Receivables Purchase and Assignment Agreement which was used as the basis to com-

10   mit wire fraud and mail fraud against the Chenoweths.

11         64.     On February 12, 2015 at 2:34 p.m., Debbie Lukhard, an employee of HMR

12   Funding committed wire fraud by e-mailing Lauren Bauer, a member of Ms. Chenoweth's

13   legal team, an e-mail which included attachments of nursing notes and fraudulent invoices

14   from MKL Services which overstated the medical and home health services provided or

15   overstated the value of the medical services that MKL Services provided Ms. Chenoweth

16   during the month of December 2014.  On April 5, 2015, MKL Services mailed or e-mailed

17   a fraudulent invoice, Invoice Number IVCR0000002364233, for $5,705.00 to HMR

18   Funding which overstated the medical and home health services provided or overstated the

19   value of the medical services.

20         65.     On April 12, 2015, MKL Services mailed or e-mailed a fraudulent invoice, In-

21   voice Number IVCR0000002376553, for $7,565.00 to HMR Funding which overstated

22   the medical and home health services provided or overstated the value of the medical ser-

23   vices that MKL Services provided Ms. Chenoweth from January 5, 2015, through January

24   11, 2015.

25         66.     On April 12, 2015, MKL Services mailed or e-mailed a fraudulent invoice, In-

26   voice Number IVCR0000002376554, for $6,775.00 to HMR Funding which overstated

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

the medical and home health services provided or overstated the value of the medical services that MKL Services provided Ms. Chenoweth from January 12, 2015, through January 18, 2015.

67.    On April 12, 2015, MKL Services mailed or e-mailed a fraudulent invoice, Invoice Number IVCR0000002376555, for $8,877.50 to HMR Funding which overstated the medical and home health services provided or overstated the value of the medical services that MKL Services provided Ms. Chenoweth from January 19, 2015 through January 25, 2015.

68.    On April 19, 2015, MKL Services mailed or e-mailed an invoice, Invoice Number IVCR0000002385914, for $24,810.00 to HMR Funding which overstated the medical and home health services provided or overstated the value of the medical services that MKL Services provided Ms. Chenoweth from January 26, 2016 through February 9, 2015.

69.    On April 17, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 274498, for $8,800.00 for service date February 15, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

70.    On April 17, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 274499, for $8,800.00 for service date February 22, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

71.    On April 17, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 274500, for $8,800.00 for service date March 1, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504

services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

72.    On April 17, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 274501, for $8,800.00 for service date March 8, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services the value of medical services that CHC Services provided Ms. Chenoweth.

73.    On April 24, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 274548, for $8,800.00 for service date March 15, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

74.    On April 24, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 274549, for $8,800.00 for service date March 22, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services the value of medical services that CHC Services provided Ms. Chenoweth.

75.    On April 24, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 274550, for $8,800.00 for service date March 29, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

76.    On May 6, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 274595, for $26,400.00 for service dates April 5, 2015, April 12, 2015, April 29, 2015 and April 26, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

1    overstated the medical and home health services provided or overstated the value of the

2    medical services that CHC Services provided Ms. Chenoweth.

3         77.    On May 28, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Num-

4    ber 274708, for $26,400.00 for service dates May 3, 2015, May 10, 2015, and May 17, 2015

5    to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the

6    medical and home health services provided or overstated the value of the medical services

7    the value of medical services that CHC Services provided Ms. Chenoweth.

8         78.    On May 29, 2015 at 3:46 p.m., Defendant Chase, an employee and owner of

9    HMR Funding, committed wire fraud by e-mailing Lawrence Kahn, Ms. Chenoweth's at-

10   torney, an e-mail which included attachments of nursing notes and fraudulent invoices from

11   MKL Services which overstated the medical and home health services provided or overstated

12   the value of the medical services that MKL Services provided Ms. Chenoweth during the

13   months of December 2014, January 2015 and February 2015.

14        79.    On May 29, 2015 at 3:47 p.m., Defendant Chase, an employee and owner of

15   HMR Funding, committed wire fraud by e-mailing Lawrence Kahn, Ms. Chenoweth's at-

16   torney, an e-mail which included attachments of fraudulent invoices from CHC Services

17   which overstated the value of medical services that CHC Services provided Ms. Chenoweth

18   during the months of February 2015 and March 2015.

19        80.    On May 29, 2015 at 3:49 p.m., Dean Chase, an employee of HMR Funding,

20   committed wire fraud by e-mailing Lawrence Kahn, Ms. Chenoweth's attorney, an e-mail

21   which included attachments of fraudulent invoices from MKL Services and CHC Services

22   which overstated the medical and home health services provided or overstated the value of

23   the medical services that MKL Services and CHC Services provided Ms. Chenoweth during

24   the months of January 2015, February 2015 and March 2015 as well as an attachment of a

25   fraudulent invoice from ECI-NRS, LLC which overstated the value of medical services that

26   ECI-NRS, LLC provided Ms. Chenoweth.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504

81.     On June 9, 2015 CHC Services either mailed or emailed a Health Insurance Claim Form to HMRF-Fund, LLC at 2900 Polo Parkway, Midlothian, VA  23113 which fraudulently overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

82.     On June 10, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 274821, for $8,800.00 for service date May 31, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

83.     On June 23, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 274900, for $17,600.00 for service dates June 7, 2015 and June 14, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

84.     On July 7, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 274992, for $17,600.00 for service dates June 21, 2015 and June 28, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

85.     On July 8, 2015 at 3:17 p.m., Debbie Lukhard, an employee of HMR Funding, committed wire fraud by e-mailing Lawrence Kahn and Lauren Bauer, members of Ms. Chenoweth's legal team, an e-mail which included attachments of fraudulent invoices from CHC Services which overstated the medical and home health services provided or overstated the value of the medical services the value of medical services that CHC Services provided Ms. Chenoweth during the month of June 2015; the e-mail also included a fraudulent Medical Expense Summary, dated June 28, 2015, for $328,263.72, which overstated the

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 17 OF 72

medical and home health services provided or overstated the value of the medical services that Ms. Chenoweth had received from various medical providers, as well as overstated the amount of medical expenses that HMR Funding had paid on Ms. Chenoweth's behalf.

86.     On July 20, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 275087, for $17,600.00 for service dates July 5, 2015 and July 12, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

87.     On July 31, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 275180, for $17,600.00 for service dates July 19, 2015 and July 26, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

88.     On August 6, 2015 at 8:16 a.m., Debbie Lukhard, an employee of HMR Funding, committed wire fraud by e-mailing Lauren Bauer, a member of Ms. Chenoweth's legal team, an e-mail which included attachments of fraudulent invoices from CHC Services which overstated the value of medical services that CHC Services provided Ms. Chenoweth during the months of June 2015 and July 2015; the e-mail also included a fraudulent Medical Expense Summary, dated July 26, 2015, for $367,687.72, which overstated the value of medical services that Ms. Chenoweth had received from various medical providers, as well as overstated the amount of medical expenses that HMR Funding had paid on Ms. Chenoweth's behalf.

89.     On August 14, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 275270, for $17,600.00 for service dates August 2, 2015 and August 9, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504

medical and home health services provided or overstated the value of the medical services the value of medical services that CHC Services provided Ms. Chenoweth.

90.     On August 25, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 275300, for $8,800.00 for service date August 16, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

91.     On August 31, 2015, TransAmerica either mailed or e-mailed a Statement for Services Rendered, regarding *Margarete Chenoweth, et al. v. City of Mercer Island, et al.*, for $30,000.00 for service dates November 1, 2014 through August 31, 2015 which overstated the medical and home health services provided or overstated the value of the medical services that TransAmerica provided Ms. Chenoweth.

92.     On September 1, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 275352, for $9,164.00 for service dates July 29, 2015 and August 23, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

93.     On September 8, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 275432, for $9,528.00 for two service dates on September 6, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

94.     On September 25, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 275570, for $9,164.00 for service dates September 18, 2015 and September 20, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

1   services that CHC Services provided Ms. Chenoweth. In fact, no services were actually pro-
2   vided.

3       95.     On September 30, 2015, TransAmerica either e-mailed or mailed a fraudulent
4   invoice, Invoice Number 2015-0930-4, for $30,000 to HMR Funding, 9211 Forest Hill
5   Ave, Suite 101, Richmond VA, 23225 which overstated the value of consulting services that
6   TransAmerica provided Ms. Chenoweth.

7       96.     On October 2, 2015, CHC Services e-mailed a fraudulent invoice, Invoice
8   Number 275641, for $9,164.00 for service dates September 24, 2015 and September 27,
9   2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which over-
10  stated the medical and home health services provided or overstated the value of the medical
11  services that CHC Services provided Ms. Chenoweth.

12      97.     On October 8, 2015, CHC Services e-mailed a fraudulent invoice, Invoice
13  Number 275704, for $9,164.00 for  service dates October 2, 2015 and October 4, 2015 to
14  Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the
15  medical and home health services provided or overstated the value of the medical services
16  that CHC Services provided Ms. Chenoweth.

17      98.     On October 15, 2015, CHC Services e-mailed a fraudulent invoice, Invoice
18  Number 275784, for $8,800.00 for  service date October 11, 2015 to Debbie Lukhard,
19  HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home
20  health services provided or overstated the value of the medical services that CHC Services
21  provided Ms. Chenoweth.

22      99.     On October 22, 2015, CHC Services e-mailed a fraudulent invoice, Invoice
23  Number 275846, for $9,528.00 for service dates October 14, 2015, October 16, 2015 and
24  October 18, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com
25  which overstated the medical and home health services provided or overstated the value of
26  the medical services that CHC Services provided Ms. Chenoweth.

**THE SULLIVAN LAW FIRM**
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

100.    On November 11, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 276002, for $9,164.00 for service dates October 30, 2015, and November 1, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

101.    On November 16, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 276063, for $8,800.00 for  service date October 11, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

102.    On November 23, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 276119, for $9,164.00 for service dates November 9, 2015 and November 15, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

103.    On November 30, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 276178, for $9,164.00 for service dates November 18, 2015 and November 22, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

104.    On December 2, 2015 at 4:32 p.m., Debbie Lukhard, an employee of HMR Funding, committed wire fraud by e-mailing Mary Kumbera, a member of Ms. Chenoweth's legal team, an e-mail which included an attachment of Certification of Billing from CHC Services which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth from inception of the contractual relationship through November 29, 2015.

**THE SULLIVAN LAW FIRM**
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 21 OF 72

105.    On December 4, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 276233, for $9,164.00 for service dates November 25, 2015 and November 29, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which over-stated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

106.    On December 22, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 276374, for $9,164.00 for service dates December 9, 2015 and December 13, 2015 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

107.    On December 31, 2015, CHC Services e-mailed a fraudulent invoice, Invoice Number 276422, for $18,328.00 for service dates December 15, 2015, December 16, 2015, December 20, 2015 and December 27, 2015 to Debbie Lukhard, HMRF-Fund, LLC at deb-biel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

108.    On January 6, 2016 at 10:21 a.m., Margot Gugumuck, an employee of HMR Funding, committed wire fraud by e-mailing Lauren Bauer, a member of Ms. Chenoweth's legal team, an e-mail which included attachments of fraudulent invoices from CHC Services which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth during the months of No-vember 2015 and December 2015; the e-mail also included a fraudulent Medical Expense Summary which overstated the medical and home health services provided or overstated the value of the medical services that Ms. Chenoweth received from various medical providers, as well as overstated the amount of medical expenses that HMR Funding had paid on Ms. Chenoweth's behalf.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 22 OF 72

109.     On January 14, 2016, CHC Services e-mailed a fraudulent invoice, Invoice Number 276491, for $17,964.00 for service dates January 3, 2016, January 6, 2016 and January 10, 2016 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

110.     On January 28, 2016 at 2:08 p.m., Debbie Lukhard, an employee of HMR Funding, committed wire fraud by e-mailing Lawrence Kahn and Lauren Bauer, members of Ms. Chenoweth's legal team, an e-mail which included a fraudulent Medical Expense Summary, dated January 25, 2016, for $632,325.96, which overstated the medical and home health services provided or overstated the value of the medical services that Ms. Chenoweth had received from various medical providers, and overstated the amount of medical expenses that HMR Funding had paid on Ms. Chenoweth's behalf.

111.     On January 29, 2016 at 8:33 a.m., Debbie Lukhard, an employee of HMR Funding, committed wire fraud by e-mailing Lawrence Kahn and Lauren Bauer, members of Ms. Chenoweth's legal team, an e-mail which included attachments of fraudulent invoices from CHC Services which overstated the medical and home health services provided or over-stated the value of the medical services that CHC Services provided Ms. Chenoweth during the month of January 2016; the e-mail also included a fraudulent Medical Expense Sum-mary, dated January 29, 2016, for $632,325.96, which overstated the medical and home health services provided or overstated the value of the medical services that Ms. Chenoweth had received from various medical providers, and overstated the amount of medical ex-penses that HMR Funding had paid on Ms. Chenoweth's behalf.

112.     On January 29, 2016, CHC Services e-mailed a fraudulent invoice, Invoice Number 276566, for $20,148.00 for service dates December 11, 2015, December 17, 2015, December 30, 2015, January 13, 2016, January 14, 2016, January 17, 2016, January 18,

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 23 OF 72

2016, January 20, 2016, January 24, 2016 to Debbie Lukhard, HMRF-Fund, LLC at deb-biel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

113.    On February 4, 2016, CHC Services e-mailed a fraudulent invoice, Invoice Number 276640, for $9,164.00 for service dates January 27, 2016 and January 31, 2016 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

114.    On February 15, 2016, CHC Services e-mailed a fraudulent invoice, Invoice Number 276698, for $17,964.00 for service dates February 3 and February 7 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

115.    On February 19, 2016, CHC Services either e-mailed a fraudulent invoice, Invoice Number 276767, for $9,801.00 for service dates February 10, 2016, February 13, 2016 and February 14, 2016 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com or mailed it to her at HMRF-Fund LLC 2900 Polo Parkway Suite 200 Midlothian, VA 23113 which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

116.    On February 24, 2016, CHC Services either e-mailed a fraudulent invoice, Invoice Number 276809, for $8,800.00 for service date February 21, 2016 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com or mailed it to her at HMRF-Fund LLC 2900 Polo Parkway Suite 200 Midlothian, VA 23113 which overstated the value of medical services that CHC Services provided Ms. Chenoweth.

117.    On March 9, 2016, CHC Services either e-mailed a fraudulent invoice, Invoice Number 276887, for $10,620.00 for service dates February 19, 2016, February 28, 2016,

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504

March 2, 2016 and March 4, 2016 to Debbie Lukhard, HMRF-Fund, LLC at deb-biel@hmrfunding.com or mailed it to her at HMRF-Fund LLC 2900 Polo Parkway Suite 200 Midlothian, VA 23113 which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

118.   On March 24, 2016, CHC Services either e-mailed a fraudulent invoice, Invoice Number 276976, for $18,146.00 for service dates March 13, 2016, March 17, 2016 and March 20, 2016 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com or mailed it to her at HMRF-Fund LLC 2900 Polo Parkway Suite 200 Midlothian, VA 23113 which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

119.   On April 1, 2016, CHC Services e-mailed a fraudulent invoice, Invoice Number 277034, for $8,800.00 for service date March 27, 2016 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com or mailed it to her at HMRF-Fund LLC 2900 Polo Parkway Suite 200 Midlothian, VA 23113 which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

120.   On April 12, 2016, CHC Services e-mailed a fraudulent invoice, Invoice Number 277097, for $18,237.00 for service dates April 3, 2016, April 7, 2016 and April 10, 2016 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com or mailed it to her at HMRF-Fund LLC 2900 Polo Parkway Suite 200 Midlothian, VA 23113 which overstated the medical and home health services provided or overstated the value of the medical services that CHC Services provided Ms. Chenoweth.

121.   On April 28, 2016, CHC Services e-mailed a fraudulent invoice, Invoice Number 277220, for $9,801.00 for service dates April 18, 2016, April 19, 2016 and April 20, 2016 to Debbie Lukhard, HMRF-Fund, LLC at debbiel@hmrfunding.com or mailed it to

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

1   her at HMRF-Fund LLC 2900 Polo Parkway Suite 200 Midlothian, VA 23113 which over-

2   stated the medical and home health services provided or overstated the value of the medical

3   services that CHC Services provided Ms. Chenoweth.

4         122.   On May 6, 2016, CHC Services e-mailed a fraudulent invoice, Invoice Number

5   277283, for $9,164.00 for service dates April 27, 2016 and May 1, 2016 to Debbie Lukhard,

6   HMRF-Fund, LLC at debbiel@hmrfunding.com or mailed it to her at HMRF-Fund LLC

7   2900 Polo Parkway Suite 200 Midlothian, VA 23113 which overstated the medical and

8   home health services provided or overstated the value of the medical services that CHC Ser-

9   vices provided Ms. Chenoweth.

10         123.   On June 7, 2016, HMR Funding committed wire fraud when Debbie Lu-

11   khard, a HMR Funding employee, e-mailed Elizabeth Larrick, an attorney for Ms. Cheno-

12   weth, which stated as follows:

13         a.   We receive invoices from providers for their full bill charges based on the

14   provider's fee schedule.

15         b.   There is no upcharge and quite honestly, I have no idea where that thought

16   is coming from.  This is no different than any other provider we purchase receivables

17   from all across the United States.

18         c.   HMR purchases the $8,800.00. full bill charge and assumes the risk of

19   case failure.  We pay a percentage of the full bill just like BC/BS, Cigna or any other

20   factoring company but that does not impact the usual and customary rate the pro-

21   vider charges.

22         124.   Debbie Lukhard on behalf of HMR Funding claimed that the bills as provided

23   to Plaintiffs' attorneys do not include an upcharge; that HMR Funding's business practices

24   in Ms. Chenoweth's case were the same as HMR Funding's business practices with every

25   other provider across the United States and, most importantly, that such bills followed the

26

**THE SULLIVAN LAW FIRM**
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 26 OF 72

"provider's fee schedule".  Attached hereto and incorporated by reference herein as **Exhibit E** to this Complaint is a true and correct copy of the June 7, 2016 e-mail from Debbie Lukhard.

125.    Such statements were consistent with previous representations made by HMR Funding to the Plaintiffs, but were false.

126.    On June 7, 2016, HMR Funding committed wire fraud when Debbie Lukhard on behalf of HMR, as a HMR Funding employee, e-mailed Elizabeth Larrick and stated that "[a]ny amount HMR Funding paid to a particular provider on any cases in which we purchase the receivable, is confidential in nature and not relevant to the underlying case" and did not provide Elizabeth Larrick with the itemized breakdown of medical services that CHC Services claimed to have provided Ms. Chenoweth, but did not.

127.    On June 16, 2016, CHC Services, in furtherance of this scheme of wire fraud, via e-mail a CHC Services employee refused to give Elizabeth Larrick, an attorney for Ms. Chenoweth, billing information regarding Ms. Chenoweth during a telephone conversation.  The employee told Elizabeth Larrick that no one, not even Ms. Chenoweth, could get information about billing practices without receiving permission from HMR Funding employees, Defendant Chase or Debbie Lukhard, so that no one who was not participating in the fraud would know the extent of the fraud or the proper amount or proper charges for services rendered and that HMR Funding was attempting to continue its scheme of wire and mail fraud on Ms. Chenoweth.

128.    On August 9, 2016 at 10:40 p.m., Debbie Lukhard, an employee of HMR Funding, committed wire fraud by e-mailing Lawrence Kahn and Lauren Bauer, members of Ms. Chenoweth's legal team, an e-mail which included attachments of fraudulent invoices from CHC Services which overstated the value of medical services that CHC Services provided Ms. Chenoweth during the months of June 2016 and July 2016; the e-mail also included a fraudulent Medical Expense Summary, dated August 5, 2016, for $839,699.96,

**THE SULLIVAN LAW FIRM**
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

Complaint for Damages and Injunctive Relief - 27 of 72

1  which overstated the value of medical services that Ms. Chenoweth had received from vari-

2  ous medical providers, as well as overstated the amount of medical expenses that HMR

3  Funding had paid on Ms. Chenoweth's behalf.

4      129.    On August 26, 2016, HMR Funding either e-mailed or mailed a Notice of

5  Lien to Ms. Chenoweth which fraudulently stated that HMR Funding had paid

6  $839,699.96 to medical and home care providers for medical services and home care on

7  behalf of Ms. Chenoweth.

8      130.    Upon information and belief, HMR Funding committed wire fraud by having

9  its financial institutions wire payments to CHC Services for medical services that CHC Ser-

10  vices provided to Ms. Chenoweth for 38 percent or less of the amount which they billed for

11  such services and, further, claimed that all of such payments were made in manner which

12  were consistent with the fee schedules of CHC Services which was false.

13     131.    Upon information and belief, HMR Funding committed mail fraud by mail-

14  ing checks to CHC Services for medical services that CHC Services provided to Ms. Cheno-

15  weth.

16     132.    Upon information and belief HMR Funding made fraudulent payments to

17  CHC Services on February 16, 2015 for $13,376.00, on June 1, 2015 for $4,949.12, on June

18  30, 2015 for $30,096.00 and on July 28, 2016 for $6,688.00 for services that CHC Services

19  provided to Ms. Chenoweth 38 percent or less of the total bill in furtherance of the fraudu-

20  lent scheme carried out by HMR Funding and the various service providers named herein

21  including CHC Services and MKL Services.

22     133.    The Chenoweths are persons who sustained an injury to their property be-

23  cause of HMR Funding's fraudulent acts, MKL Services's fraudulent acts, CHC Services's

24  fraudulent acts and TransAmerica's fraudulent acts which included a significant number of

25  acts of wire fraud and mail fraud as described herein which violated 18 U.S.C. § 1962(c).

26

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504

134.   The Chenoweths are persons who sustained an injury to their property be-cause HMR Funding, MKL Services, CHC Services and TransAmerica received income from a pattern of racketeering activity of wire fraud and mail fraud and used or invested part of the income, or the proceeds of such income to operate enterprises which are engaged in in-terstate commerce or whose activities affect interstate commerce in violation of 18 U.S.C. § 1962.

## V. FIRST CAUSE OF ACTION: RICO § 1962(c) VIOLATIONS AGAINST ALL DEFENDANTS OR, IN THE ALTERNATIVE, AGAINST HMR FUNDING ONLY

135.   Plaintiff incorporates and re-alleges the allegations above as if fully set forth herein.

136.   This Cause of Action is against Defendants HMR Funding, Chase, Guedri, MKL Services, CHC Services and TransAmerica (the "First Cause of Action Defendants").

137.   HMR Funding, MKL Services, CHC Services and TransAmerica are enter-prises engaged in and whose activities affect interstate commerce.  The First Cause of Action Defendants are employed by or associated with the enterprises.

138.   The First Cause of Action Defendants agreed to and did conduct and partici-pate in the conduct of each of their enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff.

139.   Specifically, the First Cause of Action Defendants committed multiple acts of wire fraud and mail fraud against the Chenoweths by mailing and e-mailing fraudulent in-voices and mailing and wiring payments for such fraudulent invoices.

140.   MKL Services and CHC Services submitted invoices to HMR Funding which overstated either the amount of medical care, home care or the proper charges for the care provided to Ms. Chenoweth despite the representation that a rate sheet was provided which upon information and belief it was not provided.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 29 OF 72

141.    TransAmerica submitted fraudulent invoices to HMR Funding which provided no services to Ms. Chenoweth and for which there was never an agreement to use TransAmerica for any purpose whatsoever and, thus, this bill is another of the many fraudulent invoices provided to increase the amount claimed by HMR to be owed by Ms. Chenoweth.  In fact, TransAmerica  overstated and misrepresented the services that it provided as well as the amount of services to Ms. Chenoweth.

142.    TransAmerica is a Texas limited liability company owned by Mark Guedri and Dean Chase that claims to have provided consulting services to Ms. Chenoweth for either 9 1/3 hours per day or twelve hours per day on each of five trips to Seattle.  However, no such services were provided at any time and there is no agreement for such services, per diem, travel expense or any other expenses or services by TransAmerica.  Further, Dean Chase has no training, degrees, certificates or other bases to provide neuro rehabilitation services that he claimed to provide to Ms. Chenoweth and he provided no such services to Ms. Chenoweth.

143.    HMR Funding paid MKL Services an amount equal to 40 percent of the medical services MKL Services provided Ms. Chenoweth.  HMR Funding paid CHC Services an amount equal to 38 percent of the medical services CHC Services provided Ms. Chenoweth.

144.    HMR Funding then claimed a lien against the Chenoweths and the proceeds from any lawsuit for the fraudulent amount of the medical services that MKL Services and CHC Services claimed they provided to Ms. Chenoweth as well as the alleged services provided by TransAmerica.

145.    Pursuant to and in furtherance of their fraudulent scheme, the First Cause of Action Defendants committed multiple related acts of wire fraud and mail fraud as detailed herein.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504

146.    The acts of mail and wire fraud, the mailing and e-mailing of invoices and the mailing and wiring of payments set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

147.    The First Cause of Action Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

148.    In the alternative, the funds necessary to pay the First Cause of Action Defendants are currently held in an escrow account for the benefit of the proper parties and such receipt into the escrow account constitutes constructive receipt of funds which are an unlawful debt as that term is defined in 18 U.S.C. § 1962 *et seq.*

149.    The sums alleged to be due to HMR Funding constitute an unlawful debt as they exceed the usury rate in the State of Washington and, therefore, if the other acts alleged herein do not constitute a pattern of racketeering activity, they constitute the collection of an unlawful debt in violation of 18 U.S.C. §1962(c).

150.    As a direct and proximate result of the First Cause of Action Defendants' pattern of racketeering activities or, in the alternative, the collection of an unlawful debt by HMR Funding in violation of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business and property in that the First Cause of Action Defendants have placed a lien for $839,699.96 against the Chenoweths and a portion of the proceeds received from the action that the Chenoweths pursued against the City of Mercer Island remains in escrow and cannot be distributed due to the action of the Defendants.

151.    All of these funds or, at least, a large portion of these funds are not due to any of the Defendants and, therefore, these funds should be released from the escrow account and distributed according to the terms of the fee agreement between the Plaintiffs and their attorneys.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 31 OF 72

152.    In addition, the Chenoweths were forced to accept a smaller settlement amount in the case of *Margarete Chenoweth, et al. v. City of Mercer Island, et al.* during the trial as a direct and proximate result of the actions of these Defendants.

153.    The Plaintiffs are entitled to recover damages in an amount to be determined as a result of their actions in violation of 18 U.S.C. § 1962(c) from the First Cause of Action Defendants.

## VI.SECOND CAUSE OF ACTION: RICO § 1962(a) VIOLATIONS BY MKL SERVICES, CHC SERVICES, AND TRANSAMERICA

154.    Plaintiff incorporates and re-alleges the allegations above as if fully set forth herein.

155.    MKL Services and CHC Services and TransAmerica (the "Second Cause of Action Defendants") are enterprises engaged in and whose activities affect interstate commerce.

156.    The Second Cause of Action Defendants used and invested income that was derived from a pattern of racketeering activity in an interstate enterprise in that MKL Services and CHC Services used and invested income they received from HMR Funding which was paid to them by an limited liability company based in Virginia and Texas, but conducted business in the State of Washington and used funds wired or mailed to them from entities or accounts in states other than Washington to pay their business expenses.

157.    The multiple instances of wire fraud and mail fraud including all of the racketeering activities listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

158.    As a direct and proximate result of the Second Cause of Action Defendants' racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiffs have been injured in their business and property  as they have assisted and participated in the fraudulent activities regarding Ms. Chenoweth and the Second Cause of Action Defendants invested the

**THE SULLIVAN LAW FIRM**
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

racketeering income into their businesses which allowed them to continue providing medi-cal services to Ms. Chenoweth and allowed them to continue their business to continue to participate in actions in violation of the law against others, which actions amplified the monetary losses of Ms. Chenoweth by allowing the scheme to continue.

159.    All of these funds or, at least, a large portion of these funds are not due to any of the Defendants and, therefore, these funds should be released from the escrow account and distributed according to the terms of the fee agreement between the Plaintiffs and their attorneys.

160.    In addition, the Chenoweths were forced to accept a smaller settlement amount in the case of *Margarete Chenoweth, et al. v. City of Mercer Island, et al.* during the trial as a direct and proximate result of the actions of these Defendants.

161.    Plaintiffs are entitled to recover damages in an amount to be determined as a result of their actions in violation of 18 U.S.C. § 1962(a) from the Second Cause of Action Defendants.

## VII.    <u>THIRD CAUSE OF ACTION: RICO § 1962(d) VIOLATIONS BY ALL DEFENDANTS</u>

162.    Plaintiff incorporates and re-alleges the allegations above as if fully set forth herein.

163.    Defendants HMR Funding, Chase, Guedri, MKL Services, CHC Services and TransAmerica (the "Third Cause of Action Defendants") conspired to violate 18 U.S.C. §§ 1962(a) and 1962(c).

164.    HMR Funding entered into an agreement or agreements with MKL Services to provide services to Ms. Chenoweth and in turn MKL Services provided services in fur-therance of the conspiracy against Ms. Chenoweth.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504

165.   HMR Funding entered into an agreement or agreements with CHC Services to provide services to Ms. Chenoweth and in turn CHC Services provided services in further-ance of the conspiracy against Ms. Chenoweth.

166.   Further, HMR Funding entered into an oral or written agreement with TransAmerica to provide services to Ms. Chenoweth and in turn alleged to have provided services to Ms. Chenoweth.

167.   Further, MKL Services and CHC Services were paid in full by HMR Funding at a fraudulently reduced rate and conspired with HMR Funding by agreeing to claim that the full amount of the bill remained due, by claiming that each of these entities had not been paid in full, by being bound by their agreement with HMR Funding to misrepresent the true state of affairs to anyone and to deny that they had been paid in full and refuse to disclose the amount paid to them as full compensation so as to prevent anyone from learning of the actual amounts paid by HMR Funding.

168.   Upon information and belief, TransAmerica was, in fact, paid in full for ser-vices that were not provided and for which TransAmerica had no agreement with Ms. Chenoweth to provide.  Providing services that were not authorized, receiving funds for such services from HMR Funding which were paid to TransAmerica and which were fraud-ulently charged and paid to this entity owned by the same parties as HMR Funding solely for the purpose of increasing the amount of funds paid to these individuals and to increase the claimed lien is and was part of the conspiracy in violation of 18 U.S.C. §1962, *et seq.* and was made to benefit the parties hereto.

169.   Additionally, each of these Defendants, who provided services or alleged to have provided to Ms. Chenoweth, agreed to further this conspiracy by agreeing to make false claims for the benefit of themselves and HMR Funding and, as a result, were able to invest income received and derived from a pattern of wire fraud and mail fraud in an interstate enterprise into their businesses.

**THE SULLIVAN LAW FIRM**
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 34 OF 72

170.   A small portion of the claimed bills charged by each of these entities was paid by HMR Funding as payment in full (except those believed to be paid to TransAmerica) with such income resulting from the racketeering activities of the parties and being paid to them by HMR Funding.

171.   Each of the Third Cause of Action Defendants is an enterprise under law that conspired to commit and did commit wire fraud and mail fraud against the Chenoweths for a period of twenty months by MKL Services, CHC Services and TransAmerica submitting fraudulent invoices that HMR Funding then paid or, at least, paid in part as a portion of the conspiracy according to the agreements signed by MKL Services, CHC Services and the alleged agreement with TransAmerica.

172.   The Third Cause of Action Defendants have intentionally conspired and agreed to fraudulently bill, make false representations concerning or fraudulently allege to provide services which were never sought nor supplied and then use the income directly and indirectly or invest such income that was derived from a pattern of racketeering activity in an interstate enterprise, and conducted and participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

173.   The Third Cause of Action Defendants knew that their acts were fraudulent and constituted a part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above.

174.   Such conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(a) and (c), in violation of 18 U.S.C. § 1962(d).

175.   As a direct and proximate result of the Third Cause of Action Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business and property in that: the Third Cause of Action Defendants have placed a lien for $839,699.96 on the Chenoweths, and the

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 35 OF 72

1  Chenoweths were forced to accept a smaller settlement amount in the case of *Margarete*
2  *Chenoweth, et al. v. City of Mercer Island*.

3       176.    Plaintiffs are entitled to recover damages in an amount to be determined as a
4  result of their actions in violation of 18 U.S.C. § 1962(c) from the Third Cause of Action
5  Defendants.

6              VIII.    FOURTH CAUSE OF ACTION:  CIVIL CONSPIRACY

7       177.    Plaintiff incorporates and re-alleges the allegations above as if fully set forth
8  herein.

9       178.    Defendants HMR Funding, Chase, Guedri, TransAmerica, MKL Services,
10  and CHC Services conspired and devised a scheme to defraud the Chenoweths.

11      179.    To accomplish this scheme, HMR Funding, MKL Services and CHC Services
12  entered into agreements whereby MKL Services and CHC Services would each submit
13  fraudulent invoices to HMR Funding as to the medical services which MKL Services and
14  CHC Services provided to Ms. Chenoweth.

15      180.    In this regard, MKL Services and CHC Services agreed to either overstate the
16  medical and home health services provided to Ms. Chenoweth or overstate the value of the
17  medical services provided to her and in turn, HMR Funding would only pay a percentage of
18  the fraudulent invoices to MKL Services and CHC Services while claiming that it had paid
19  the full amount in its Notice of Liens to the Chenoweths.  Attached hereto and incorporated
20  by reference herein as **Exhibit F** is a true and correct copy of the Notice of Lien dated
21  8/5/2016.

22      181.    HMR Funding, MKL Services and CHC Services represented to Ms. Cheno-
23  weth that the charges were reasonable, normal and customary for the services provided.

24      182.    Additionally, Defendants HMR Funding, Chase, Guedri, and TransAmerica
25  conspired a scheme to defraud the Chenoweths.

26

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 36 OF 72

183.    In this regard, TransAmerica submitted fraudulent invoices to HMR Funding which overstated the medical and home health services provided or overstated the value of medical services it provided to Ms. Chenoweth, and HMR Funding included the full invoice amount on its Notice of Liens to the Chenoweths even though HMR Funding knew that the invoices were fraudulent. *See* **Exhibit F**.

184.    As a direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. §§ 1962(a), 1962(c), and 1962(d) as set forth herein, Plaintiffs have been injured in their business and property in that HMR Funding, MKL Services, CHC Services and TransAmerica have placed a lien for $839,699.96 on the Chenoweths.

185.    In addition, the Chenoweths were forced to accept a smaller settlement amount in the case of *Ms. Chenoweth, et al. v. City of Mercer Island, et al.* during the trial due to the testimony by said Defendants regarding the manner and amount which the Chenoweths had been charged for the medical services rendered which was as a direct and proximate result of the actions of these Defendants.

186.    The manner and amount which the Chenoweths had been charged by HMR Funding for the medical services rendered by MKL Services, CHC Services and TransAmerica directly cut against Ms. Chenoweths claims in the lawsuit and rendered Ms. Chenoweth and her attorneys less credible as they appeared to be parties to Defendants' fraud, both of which resulted in her having to agree to a much lower settlement amount in the case.

187.    As a result of the civil conspiracy by and between HMR Funding, Chase, Guedri, MKL Services, CHC Services and TransAmerica, the Plaintiffs have been damaged in an amount to be determined which amount is greater than the amount for federal diversity jurisdiction.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504

188.    Plaintiff are entitled to judgment from and against  MKL Services, CHC Services and TransAmerica in an amount to be determined which amount is greater than the amount for federal diversity jurisdiction.

## IX.FIFTH CAUSE OF ACTION:  FRAUD

189.    Plaintiff incorporates and re-alleges the allegations above as if fully set forth herein.

190.    Defendants HMR Funding, Chase, Guedri, MKL Services and CHC Services entered into a scheme to defraud the Chenoweths whereby MKL Services and CHC Services would submit fraudulent invoices to HMR Funding which overstated the medical and home health services provided or overstated the value of the medical services they provided to Ms. Chenoweth and HMR Funding would then only pay a percentage of the fraudulent invoices while claiming that it had paid the full amount in its Notice of Lien to the Chenoweths.

191.    Defendants HMR Funding and TransAmerica entered into an agreement to defraud the Chenoweths where TransAmerica submitted fraudulent invoices to HMR Funding which stated that it had provided medical or neuro-rehabilitation services to the Chenoweths which it did not.  Assuming arguendo, that TransAmerica did provide any services to the Chenoweths, there was no agreement to provide services and the alleged provider of such services is not authorized to, licensed to or otherwise qualified to provide such alleged services.   Therefore,  payment of this bill by HMR Funding for any sum to TransAmerica to any entity owned by the same persons who are the principals in HMR Funding simply continues their false and fraudulent scheme to deprive the Chenoweths of funds by participating in fraud with the intent to damage them.

192.    Upon information and belief, MKL Services and Ms. Chenoweth entered into a Service Agreement on November 29, 2014, which stated that Ms. Chenoweth had read the

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 38 OF 72

entire Service Agreement and rate sheet, including the terms and conditions on the reverse side.

193.    Upon information and belief, MKL Services provided Ms. Chenoweth a copy of MKL Services's rate sheet and terms and conditions.

194.    Upon information and belief, neither the Chenoweth nor any of her legal team have a copy of either the rate sheet that MKL Services gave to Ms. Chenoweth to review, or the terms and conditions printed on the reverse side of either the Service Agreement or the rate sheet.

195.    Upon information and belief, the rate sheet that MKL Services provided Ms. Chenoweth showed the rates that MKL Services was going to charge for providing various medical and home health services to Ms. Chenoweth which was a representation of an existing fact.

196.    Rates listed on the rate sheet MKL Services provided to Ms. Chenoweth were material to the Chenoweths' decision to use MKL Services to provide various medical and home health services to Ms. Chenoweth.

197.    Upon information and belief, the rates listed on the rate sheet MKL Services provided to Ms. Chenoweth were false and not the rates that MKL Services actually charged Ms. Chenoweth for the various medical and home health services it provided to Ms. Chenoweth.

198.    Upon information and belief, MKL Services knew that the rates listed on its rate sheet were false because MKL Services and HMR Funding had already entered into a Lien and Receivables Purchase and Assignment Agreement which stated that HMR Funding would pay MKL Services and MKL Services would accept 40 percent of the Full Bill Charges for various medical and home health services that MKL Services provided to Ms. Chenoweth as such rate of 40 percent was the value or greater than the value of services provided to Ms. Chenoweth.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 39 OF 72

199.   Upon information and belief MKL Services knew the rates listed on its rate sheet were false or, in the alternative, knew that it would bill for services not provided or bill for services at a rate which was substantially higher than that represented to the Chenoweths since HMR Funding was only going to pay 40 percent of any invoice so in order to receive a favorable amount for its services MKL Services would charge Ms. Chenoweth substantially higher rates than those listed on the rate sheet in order for MKL Services to make a profit.

200.   Katherine Lyons, the agency owner of MKL Services admitted under oath in a deposition that 40 percent of MKL Services invoice charges was a reasonable rate for the various medical and home health services that it provided to Ms. Chenoweth, and that it would not have provided care to Ms. Chenoweth if it did not believe that the payments of 40 percent of their invoices was a reasonable value.  However, Katherine Lyons and MKL Services knew that Ms. Chenoweth would be charged substantially more than the true value of the services provided.

201.   Katherine Lyons admitted under oath in a deposition that MKL Services knew that HMR Funding would get a higher amount of the proceeds of Ms. Chenoweth's lawsuit against the City of Mercer than the amount that HMR Funding paid MKL Services for providing various medical and home health services to Ms. Chenoweth.

202.   Katherine Lyons admitted under oath in a deposition that it was her belief that the amount of money MKL Services charged Ms. Chenoweth for the various medical and home health services was more than MKL Services had ever charged a customer for two months' worth of care.

203.   MKL Services intended for Ms. Chenoweth to act on the representations of its service rates on its rate sheet by selecting MKL Services to perform various medical and home health services for her.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504

204.   Ms. Chenoweth was ignorant to the fact that the service rates listed on MKL Services rate sheets would not be the rates that MKL Services would charge her for providing various medical and home health services to her.

205.   Ms. Chenoweth relied on the truth of the representations that MKL Services made in its rate sheets of what the rates would be for the various medical and home health services that it would provide to her.

206.   Ms. Chenoweth, as a consumer and without knowledge of the falsity of the representations, had the right to rely on the representations that MKL Services made it its rate sheets of what the rates would be for the various medical and home health services that it would provide to her.

207.   Ms. Chenoweth was damaged when MKL Services overstated the medical and home health services provided or overstated the value of medical services it provided to Ms. Chenoweth in its fraudulent invoices it sent to HMR Funding which substantially deviated from the rate sheet it provided to Ms. Chenoweth.

208.   Ms. Chenoweth was damaged because HMR Funding sent multiple Notice of Liens against the Chenoweths and, ultimately, claimed that MKL Services provided $94,422.50 worth of various medical and home health services, when in reality MKL Services only claimed to have provided $37,777.00 worth of various medical and home health services; that Ms. Chenoweth was also damaged because the $37,777.00 worth of various medical and home health services was not the market rate for the services that MKL Services provided to Ms. Chenoweth and, in fact, was greater than that normally charged by MKL Services for such medical and home care.

209.   In regard to CHC Services who succeeded MKL Services in providing services to Ms. Chenoweth, Laura Clark, clinical supervisor of CHC Services, met with Ms. Chenoweth and explained the services that CHC Services could provide to her, and also went over the CHC Services Consent and Service Agreement.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

210.    CHC Services has a price of services for its various medical and home health services that it provides to its customers.

211.    Upon information and belief, neither Ms. Chenoweth nor her attorneys have a copy of CHC Services Consent and Service Agreement nor a copy of its price of services.

212.    Upon information and belief, Laura Clark made representations to Ms. Chenoweth that CHC Services' rates would be their normal rates for such services for the various medical and home health services that CHC Services could and would provide to Ms. Chenoweth.

213.    The rates that Laura Clark represented were CHC Services's rates were material to the Chenoweths' decision to use CHC Services to provide various medical and home health services to Ms. Chenoweth.

214.    Upon information and belief, the rates that Laura Clark represented would be the rates that CHC Services would charge Ms. Chenoweth were false and not the rates that CHC Services actually charged Ms. Chenoweth for the various medical and home health services it provided to Ms. Chenoweth.

215.    Upon information and belief CHC Services knew that the rates that Laura Clark represented to Ms. Chenoweth were false because CHC Services and HMR Funding had already entered into a Lien and Receivables Purchase and Assignment Agreement which stated that HMR Funding would pay CHC Services 38 percent of the Full Bill Charges for various medical and home health services that CHC Services provided to Ms. Chenoweth.

216.    Tammy Hjort, a CHC Services employee, admitted under oath in a deposition that CHC Services knew that HMR Funding would be collecting more than 38 percent from Ms. Chenoweth.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 42 OF 72

217.   CHC Services intended for Ms. Chenoweth to act on the representations that its normal service rates would be used to select CHC Services to perform various medical and home health services for her.

218.   Ms. Chenoweth was ignorant of the fact that Laura Clark's representations as to CHC Services's service rates would the normal rates and would not be the actual rates that CHC Services would charge her for providing various medical and home health services.

219.   Ms. Chenoweth relied on the truth of the representations that Laura Clark made regarding the use of the normal rates by CHC Services.

220.   Ms. Chenoweth, as a consumer and without knowledge of the falsity of the representations, had the right to rely on the representations that Laura Clark made on behalf of CHC Services of what CHC Services's rates would be for the various medical and home health services that it would provide to her.

221.   Ms. Chenoweth was damaged when CHC Services overstated the medical and home health services provided or overstated the value of medical services it provided to Ms. Chenoweth in its fraudulent invoices it sent to HMR Funding which substantially deviated from the rates that Laura Clark represented to Ms. Chenoweth that CHC Services would charge her.

222.   Ms. Chenoweth was damaged because HMR Funding sent multiple Notice of Liens against the Chenoweths which claimed that CHC Services provided $668,497.00 worth of various medical and home health services, when in reality CHC Services was only paid $254,028.86 for the various medical and home health services; that Ms. Chenoweth was also damaged because the $254,028.86 worth of various medical and home health services was not the market rate for the services that CHC Services provided to Ms. Chenoweth.

223.   In fact, CHC Services did not charge for the approximately sixty to sixty five hours of services provided each week, but charged as if CHC Services was providing care 24/7 or 168 hours per week when this was false.  Further, the rate billed was in excess of

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 43 OF 72

200 percent of the rate that would be charged if CHC Services actually provided services of 168 hours per week.

224.    HMR Funding by the terms of its agreements prohibited MKL Services and CHC Services from revealing any information regarding Ms. Chenoweth's billing without HMR Funding's permission, even to Ms. Chenoweth or her attorneys despite the fact that the Service Agreement states that the bills will always be available to the Plaintiff's attorneys.

225.    HMR Funding made representations to Ms. Chenoweth that any funds HMR Funding used to pay medical providers for providing various medical and home health services to Ms. Chenoweth would spent on a non-recourse basis.

226.    HMR Funding's representations that any funds HMR Funding used to pay medical providers for providing various medical and home health services to Ms. Chenoweth would be spent a non-recourse basis were material to the Chenoweths' decision to use HMR Funding to pay these medical providers on Ms. Chenoweth's behalf.

227.    HMR Funding's representations that any funds HMR Funding used to pay medical providers for providing various medical and home health services to Ms. Chenoweth would be provided on a non-recourse basis, i.e. no recovery unless the Plaintiffs were successful were false because the funds HMR Funding used to pay medical providers for various medical and home health services for Ms. Chenoweth were not provided on a non-recourse basis.  To the contrary, the HMR Funding provided contracts for the medical provider and the contracts state that the Chenoweths would be responsible regardless of any recovery or the success of the Plaintiff and her claims, contrary to HMR Funding's advertising and contrary to the representations made by HMR Funding to the Chenoweths.

228.    Upon information and belief, HMR Funding knew that the representations HMR Funding made that any funds HMR Funding used to pay medical providers for providing various medical and home health services to Ms. Chenoweth would be on a non-

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

recourse basis were false because HMR Funding provided the Assignment Agreement be-
tween Ms. Chenoweth and MKL Services signed November 24, 2014 which stated that "Pa-
tient understands that, despite the existence of this Assignment, Patient remains directly
responsible for all Medical Expenses arising out of the Services provided by Medical Pro-
vider."

229.   Upon information and belief, HMR Funding knew that representations
HMR Funding made that any funds HMR Funding used to pay medical providers for
providing various medical and home health services to Ms. Chenoweth would be on a non-
recourse basis were false because HMR Funding provided the Assignment Agreement be-
tween Ms. Chenoweth and CHC Services signed February 10, 2015, which stated that "Pa-
tient understands that, despite the existence of this Assignment, Patient remains directly
responsible for all Medical Expenses arising out of the Services provided by Medical Pro-
vider."

230.   HMR Funding knew that the representations HMR Funding made that any
funds HMR Funding used to pay medical providers for providing various medical and home
health services to Ms. Chenoweth would be on a non-recourse basis were false because HMR
Funding facilitated an Assignment Agreement between Ms. Chenoweth and TransAmerica
signed January 28, 2015 which stated that "Patient understands that, despite the existence
of this Assignment, Patient remains directly responsible for all Medical Expenses arising out
of the Services provided by Medical Provider."

231.   HMR Funding intended for Ms. Chenoweth to act on the representations that
any funds HMR Funding used to pay medical providers for providing various medical and
home health services to Ms. Chenoweth would be spent on a non-recourse basis in selecting
HMR Funding as the company to provide these funds on behalf of Ms. Chenoweth.

232.   Ms. Chenoweth reasonably relied on the truth of the representations that
HMR Funding made that any funds that HMR Funding used to pay medical providers for

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

Complaint for Damages and Injunctive Relief - 45 of 72

providing various medical and home health services to Ms. Chenoweth would be spent on a non-recourse basis. Further, the HMR website states that the funding is without recourse which is also false.

233.    Ms. Chenoweth, as a consumer and without knowledge of the falsity of the representations, had the right to rely on the representations that HMR Funding made that any funds that HMR Funding used to pay medical providers for providing various medical and home health services to Ms. Chenoweth would be provided on a non-recourse basis.

234.    Ms. Chenoweth was damaged because HMR Funding made representations that any funds that HMR Funding used to pay medical providers for providing various medical and home health services to Ms. Chenoweth would be spent on a non-recourse basis but under the Assignment Agreement, Ms. Chenoweth still remains directly responsible to MKL Services for all Medical Expenses arising out of the Services provided by Medical Provider, in the amount of $94,422.50, even though HMR Funding has purchased the accounts receivable from MKL Services for substantially less than the proper amount due to her.

235.    Ms. Chenoweth was damaged because HMR Funding made representations that any funds that HMR Funding used to pay medical providers for providing various medical and home health services to Ms. Chenoweth would be spent on a non-recourse basis but under the Assignment Agreement, Ms. Chenoweth still remains directly responsible to CHC Services for all Medical Expenses arising out of the Services provided by Medical Provider, in the amount of $668,497.00, even though HMR Funding has purchased the accounts receivable from CHC Services for substantially less than the alleged amount due (which is substantially and fraudulently inflated) .

236.    Ms. Chenoweth was damaged because HMR Funding made representations that any funds that HMR Funding used to pay medical providers for providing various medical and home health services to Ms. Chenoweth would be spent on a non-recourse basis but under the Assignment Agreement, Ms. Chenoweth still remains directly responsible to

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 46 OF 72

TransAmerica for all Medical Expenses arising out of the Services provided by Medical Provider, in the amount of $49,902.01, even though HMR Funding has purchased the accounts receivable.

237.    Ms. Chenoweth was damaged because she remains directly responsible for accounts payable in the amount of $812,821.51 total to MKL Services, CHC Services and TransAmerica even though HMR Funding purchased the accounts receivable for substantially less than that sum, and even though Ms. Chenoweth also remains directly responsible for the accounts receivable that HMR Funding has.

238.    Defendants HMR Funding and MKL Services entered into a scheme to defraud the Chenoweths where MKL Services submitted fraudulent invoices to HMR Funding which overstated the medical and home health services provided or overstated the value of the medical services it provided to Ms. Chenoweth and HMR Funding only paid MKL Services 40 percent of the MKL Services's invoices while claiming that HMR Funding had paid the full amount in its Notice of Liens to the Chenoweths.

239.    MKL Services and HMR Funding entered into a Lien Receivables Purchase and Assignment Agreement where HMR Funding agreed to purchase the accounts receivable from MKL Services regarding the medical and home health services it provided to Ms. Chenoweth.

240.    Upon information and belief MKL Services and HMR Funding agreed that MKL Services would send the invoices of the accounts receivable to HMR Funding, and then HMR Funding would send a notice of the accounts receivable to Ms. Chenoweth.

241.    MKL Services sent invoices to HMR Funding which contained representations as to the value of the medical and home health services that MKL Services had provided to Ms. Chenoweth for the time period that the invoice covered; MKL Services sent invoices to HMR Funding on December 7, 2014, December 21, 2014, February 8, 2015, April 5, 2015, April 12, 2015 and April 19, 2015.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 47 OF 72

242.    The value of the medical and home health services that MKL Services represented on its invoices was material to Ms. Chenoweth's use of MKL Services to continue providing medical and home health services to her.

243.    The value of the medical and home health services listed on each of the MKL Services invoices was false and overinflated the true value of the services that MKL Services provided to Ms. Chenoweth.

244.    MKL Services knew that the value of the medical and home health services listed on each of its invoices were false because they substantially deviated from the normal rates that MKL Services charged for the same medical and home health services to other customers and from what was represented to the Chenoweths as the rates to be charged for such Services.

245.    MKL Services knew that the value of the medical and home health services on its invoices were false because MKL Services and HMR Funding had already entered into a Lien and Receivables Purchase and Assignment Agreement which stated that HMR Funding would pay MKL Services 40 percent of the Full Bill Charges for various medical and home health services that MKL Services provided to Ms. Chenoweth.

246.    MKL Services knew the value of the medical and home health services on its invoices were false since HMR Funding was only going to pay 40 percent of any invoice then MKL Services would charge Ms. Chenoweth substantially higher rates than those listed on the rate sheet or represented for MKL Services to make a profit.

247.    MKL Services intended for HMR Funding and Ms. Chenoweth to act upon the value of the medical and home health services on its invoices by Ms. Chenoweth continuing to receive medical and home health services from MKL Services and for HMR Funding to continue paying the invoices.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 48 OF 72

248.    Ms. Chenoweth was ignorant to the fact that the value of the medical and home health services listed on the MKL Services invoices was not the actual value of the various medical and home health services that MKL Services provided to her.

249.    Ms. Chenoweth relied on the truth of the representations that MKL Services made in its invoices for the value of the various medical and home health services when she decided to keep using MKL Services to provide the various medical and home health services to her.

250.    Ms. Chenoweth, as a consumer and without knowledge of the falsity of the representations, had the right to rely on the representations that MKL Services made it its invoices as to the value of the various medical and home health services that it provided to her.

251.    Ms. Chenoweth was damaged when MKL Services overstated the medical and home health services provided or overstated the value of medical services it provided to Ms. Chenoweth in its fraudulent invoices that it sent to HMR Funding which substantially deviated from the actual value of the medical and home health services it provided to her because Ms. Chenoweth continued to use MKL Services based in part on the fraudulent invoices, which added to the amount of the accounts receivables that HMR Funding purchased from MKL Services and later claimed on its Notice of Lien against Ms. Chenoweth.

252.    Ms. Chenoweth was damaged because HMR Funding sent multiple Notice of Liens against the Chenoweths which claimed that MKL Services provided $94,422.50 worth of various medical and home health services, when in reality MKL Services only claimed to have provided $37,777.00 worth of various medical and home health services; that Ms. Chenoweth was also damaged because the $37,777.00 worth of various medical and home health services was not the market rate for the services that MKL Services provided to Ms. Chenoweth.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504

253.    Defendants HMR Funding and CHC Services entered into a scheme to defraud the Chenoweths where CHC Services submitted fraudulent invoices to HMR Funding which overstated the medical and home health services provided or overstated the value of the medical services it provided to Ms. Chenoweth and HMR Funding only paid CHC Services 38 percent of CHC Services's invoices while claiming that HMR Funding had paid the full amount in its Notice of Liens to the Chenoweths.

254.    CHC Services and HMR Funding entered into a Lien Receivables Purchase and Assignment Agreement where HMR Funding agreed to purchase the accounts receivable from CHC Services regarding the medical and home health services it provided to Ms. Chenoweth.

255.    Upon information and belief, CHC Services and HMR Funding agreed that CHC Services would send the invoices of the accounts receivable to HMR Funding, and then HMR Funding would send a notice of the accounts receivable to Ms. Chenoweth.

256.    CHC Services sent invoices to HMR Funding which contained representations as to the value of the medical and home health services that CHC Services claimed to have provided to Ms. Chenoweth for the time period that the invoice covered.  However, such representations were false as to the amount of services provided and the value of such services.  CHC Services sent invoices to HMR Funding on February 9, 2015, April 17, 2015, April 24, 2015, May 6, 2015, May 28, 2015, June 4, 2015, June 9, 2015, June 10, 2015, June 23, 2015, July 7, 2015, July 20, 2015, July 31, 2015, August 14, 2015, August 25, 2015, September 1, 2015, September 8, 2015, September 25, 2015, October 2, 2015, October 8, 2015, October 15, 2015, October 22, 2015, November 11, 2015, November 16, 2015, November 23, 2015, November 30, 2015, December 4, 2015, December 22, 2015, December 31, 2015, January 14, 2016, January 29, 2016, February 4, 2016, February 15, 2016, February 15, 2016, February 19, 2016, February 24, 2016, March 9, 2016, March 24, 2016, April 1, 2016, April 12, 2016, April 28, 2016 and May 6, 2016.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 50 OF 72

257.    The value of the medical and home health services that CHC Services represented on its invoices was material to Ms. Chenoweth's use of CHC Services to continue providing medical and home health services to her.

258.    The value of the medical and home health services listed on each of the CHC Services invoices was false and overinflated the amount of services provided and the true value of the services that CHC Services provided to Ms. Chenoweth.

259.    CHC Services knew that the value of the medical and home health services listed on each of its invoices were false because they substantially deviated from the normal rates that CHC Services charged for the same medical and home health services to other customers.

260.    CHC Services knew that the value of the medical and home health services on its invoices were false because CHC Services and HMR Funding had already entered into a Lien and Receivables Purchase and Assignment Agreement which stated that HMR Funding would pay CHC Services 38 percent of the Full Bill Charges for various medical and home health services that CHC Services provided to Ms. Chenoweth.

261.    CHC Services knew the value of the medical and home health services on its invoices were false since HMR Funding was only going to pay 38 percent of any invoice and that CHC Services would charge Ms. Chenoweth substantially higher rates than those what was proper and reasonable in order for CHC Services to make a profit when it would only receive 38 percent of the total bill.

262.    CHC Services intended for HMR Funding and Ms. Chenoweth to act upon the value of the medical and home health services on its invoices by Ms. Chenoweth continuing to receive medical and home health services from CHC Services and for HMR Funding to continue paying the invoices.

263.    Ms. Chenoweth was ignorant of the fact that the value of the medical and home health services listed on the CHC Services invoices was not the actual value of the

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 51 OF 72

various medical and home health services that CHC Services provided to her and that the services billed were far in excess of the services actually provided as bills were not regularly provided to her.

264.   Ms. Chenoweth relied on the truth of the representations that CHC Services made to her for the charges and for the various medical and home health services when deciding to keep using CHC Services to provide the various medical and home health services to her.

265.   Ms. Chenoweth, as a consumer and without knowledge of the falsity of the representations, had the right to rely on the representations that CHC Services made to her as to the charges and the value of the various medical and home health services that it provided to her.

266.   Ms. Chenoweth was damaged when CHC Services overstated the medical and home health services provided and overstated the value of medical services it provided to Ms. Chenoweth in its fraudulent invoices that it sent to HMR Funding which substantially deviated from the actual value of the medical and home health services it provided to her because Ms. Chenoweth continued to use CHC Services without knowledge that she was being billed fraudulently both in amount of services provided and in cost, which improperly added to the amount of the accounts receivables that HMR Funding purchased from CHC Services and later claimed on its Notice of Lien against Ms. Chenoweth.

267.   Ms. Chenoweth was damaged because HMR Funding sent multiple Notices of Lien against the Chenoweths which claimed that CHC Services provided $668,497.00 worth of various medical and home health services, when in reality CHC Services claimed to have provided $254,028.86 or less due to the misrepresentations in the amount of services provided and the charges for the medical and home health services; that Ms. Chenoweth

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504

was also damaged because the $254,028.86 worth of various medical and home health services was greater than the market rate for the services that CHC Services provided to Ms. Chenoweth.

268.    Defendant HMR Funding entered into schemes with MKL Services and CHC Services to defraud the Chenoweths where MKL Services and CHC Services submitted fraudulent invoices to HMR Funding which overstated the medical and home health services provided or overstated the value of the medical services they provided to Ms. Chenoweth and HMR Funding only paid MKL Services 40 percent of its invoices and only paid CHC Services 38 percent of its invoices while claiming that HMR Funding had paid the full amount in its Notice of Liens to the Chenoweths.

269.    HMR Funding entered into Lien Receivables Purchase and Assignment Agreements with MKL Services and CHC Services where HMR Funding agreed to purchase the accounts receivable from MKL Services and CHC Services regarding the medical and home health services it provided to Ms. Chenoweth.

270.    Upon information and belief, HMR Funding entered into agreements with MKL Services and CHC Services where MKL Services and CHC Services would send their invoices of their accounts receivable to HMR Funding and then HMR Funding would pay the percentages set forth above, but the actual bills were not provided to the Chenoweths despite the agreement to the contrary.

271.    On a few occasions, HMR Funding sent Notices of Liens to Ms. Chenoweth which contained representations as to the value of the accounts receivable that HMR Funding had purchased from MKL Services and CHC Services regarding the various medical and home health services they had provided Ms. Chenoweth for the time period that the Notices of Liens.

272.    The stated value of the accounts receivable that HMR Funding had purchased from MKL Services and CHC Services that HMR Funding represented on its Notices of

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 53 OF 72

1    Liens was material to Ms. Chenoweth's use of HMR Funding to continue paying the service

2    providers to provide medical and home health services to Ms. Chenoweth.

3          273.    The amount of the accounts receivable listed on each of the Notices of Liens

4    that HMR Funding sent Ms. Chenoweth were false and overstated the services provided as

5    well as the value of medical and home health services that MKL Services and CHC Services

6    provided to Ms. Chenoweth, and substantially overstated the amount that HMR Funding

7    paid to MKL Services and CHC Services for those accounts receivable.

8          274.    HMR Funding knew that the amount of the accounts receivable listed on each

9    of the Notices of Liens it sent to Ms. Chenoweth was false because the amount of the ac-

10   counts receivable listed on the Notices of Liens was different than the amount HMR Fund-

11   ing paid to MKL Services and CHC Services for the accounts receivable, and the accounts

12   receivable themselves overstated the services provided, the value of the medical and home

13   health services as well as the amount paid to MKL Services and CHC Services for services

14   provided to Ms. Chenoweth.

15         275.    HMR Funding knew that the amount of the accounts receivable listed on each

16   of the Notices of Liens it sent to Ms. Chenoweth was false because HMR Funding only paid

17   MKL Services 40 percent of the value of MKL Services's accounts receivable and HMR

18   Funding only paid CHC Services 38 percent of the amount of CHC Services's accounts re-

19   ceivable, and HMR Funding knew that the amounts of the accounts receivable it purchased

20   from MKL Services and CHC Services were false.

21         276.    HMR Funding intended for Ms. Chenoweth to act upon the representation

22   that the amount of the medical and home health services contained in the accounts receiva-

23   bles on its Notices of Liens was correct so that Ms. Chenoweth would continue to receive

24   medical and home health services from MKL Services and CHC Services and for HMR

25   Funding to continue paying the invoices so that later HMR Funding would collect money

26   from Ms. Chenoweth for the amount contained on the Notices of Liens.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 54 OF 72

277.    Ms. Chenoweth was ignorant of the fact that the amount of the accounts receivable listed on the HMR Funding Notices of Liens was not the actual amount of the accounts receivable, and that HMR Funding did not pay MKL Services and CHC Services the full amount for their accounts receivable.

278.    Ms. Chenoweth relied on the truth of the representations that HMR Funding made in its Notices of Liens that the amount of the accounts receivable was the correct amount of the accounts receivable.

279.    Ms. Chenoweth, as a consumer and without knowledge of the falsity of the representations, had the right to rely on the representations that HMR Funding made it its Notices of Liens as to the amount of the accounts receivable that it provided to her.

280.    Ms. Chenoweth was injured by the false representations that HMR Funding made in its Notices of Liens because she continued using HMR Funding to pay service providers to provide her with various medical and home health services when she would have stopped being a customer of HMR Funding if she had known that it was making false representations on its Notices of Liens, which increased the amount of money that she owed HMR Funding.

281.    The Chenoweths are entitled to recover damages in an amount to be determined at trial as a result of fraud by Defendants in claiming excessive amounts for medical services they provided to Ms. Chenoweth.

282.    In addition, the Chenoweths were forced to accept a smaller settlement amount in the case of *Margarete Chenoweth, et al. v. City of Mercer Island, et al.* during the trial as a direct and proximate result of the actions of these Defendants.

283.    The Plaintiffs are entitled to recover damages in an amount to be determined as a result of their fraudulent actions as set forth herein.

284.    The Chenoweths are entitled to a judgment for compensatory damages from and against Defendants in an amount to be determined at trial.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 55 OF 72

1

## X. SIXTH CAUSE OF ACTION:  BREACH OF CONTRACT AS TO MKL SERVICES AND HMR FUNDING

2

3      285.    Plaintiff incorporates and re-alleges the allegations above as if fully set forth

4   herein.

5      286.    On or about November 24, 2014, Ms. Chenoweth entered into an Assignment

6   Agreement with MKL Services and HMR Funding whereby Ms. Chenoweth agreed to as-

7   sign her interest in any recovery from any litigation involving an Incident in which

8   Ms. Chenoweth to pay the expenses she incurred for certain medical services to be provided

9   to her by MKL Services. *See* **Exhibit A**.

10      287.    Ms. Chenoweth acknowledged that the Expenses Amounts which MKL Ser-

11   vices was to charge for the services provided were reasonable and similar to charges of other

12   providers.

13      288.    As a result of the Assignment Agreement, Ms. Chenoweth entered into a Ser-

14   vice Agreement with MKL Services in which HMR Funding received the billing information

15   for the home health care services being provided to Ms. Chenoweth.  *See* **Exhibit B**.

16      289.    Pursuant to the Service Agreement, MKL Services was to provide home health

17   medical services for ten hours per day, seven days a week which involved services by or for

18   the following:  CNA, LPN, RN, Transportation and Blood Draw.

19      290.    Rates for the services to be provided to Ms. Chenoweth were negotiated with

20   HMR Funding by MKL Services.

21      291.    Upon information and belief instead of charging for services for ten hours per

22   day, seven days a week at their normal, customary rate, MKL Services with HMR Funding's

23   knowledge and approval charged an escalated rate for such services and computed the esca-

24   lated rate as if they were being provided 24 hours per day, seven days a week.

25

26

**THE SULLIVAN LAW FIRM**
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 56 OF 72

292.    Upon information and belief, MKL Services and HMR Funding knew that the amount being charged to Ms. Chenoweth for the services being rendered was not reasonable and was not similar to charges of other providers as set forth in the Assignment Agreement.

293.    In addition to charging more per hour and for more hours than their agreement provided, MKL Services generally only provided services to Ms. Chenoweth for a total of 54 hours per week.

294.    These actions by MKL Services and HMR Funding were in breach of their agreements.

295.    As a result of the breach, Ms. Chenoweth has been damaged in an amount to be determined at trial.

296.    Ms. Chenoweth is entitled to judgment from and against MKL Services and HMR Funding in an amount to be determined at trial.

297.    Further, Ms. Chenoweth is entitled to attorney's fees and cost as a result of the breach of contract by MKL Services and HMR Funding.

## XI. SEVENTH CAUSE OF ACTION: BREACH OF CONTRACT AS TO CHC SERVICES AND HMR FUNDING

298.    Plaintiff incorporates and re-alleges the allegations above as if fully set forth herein.

299.    On or about February 10, 2015, Ms. Chenoweth entered into an Assignment Agreement with CHC Services and HMR Funding whereby Ms. Chenoweth agreed to assign her interest in any recovery from any litigation to pay the expenses she incurred for certain medical services to be provided to her by MKL Services. *See* **Exhibit D**.

300.    Ms. Chenoweth acknowledged that the Expense Amounts which MKL Services was to charge for the services provided were reasonable and similar to charges of other providers.

**THE SULLIVAN LAW FIRM**
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

301.    Ms. Chenoweth entered into an agreement with CHC Services in which HMR Funding received the billing information for the home health care services being provided to Ms. Chenoweth.

302.    Pursuant to the agreement, CHC Services was to provide in home health care services for thirteen hours per day on Monday, Tuesday and Thursday, nine hours per day on Wednesday and Friday and two hours per day on Saturday and Sunday for a total of 61 hours per week.

303.    Rates for the services to be provided to Ms. Chenoweth were negotiated with HMR Funding by CHC Services.

304.    Upon information and belief instead of charging for said services at their normal, customary rate, CHC Services with HMR Funding's knowledge and approval charged an escalated rate for such services and computed the escalated rate as if they were being provided 24 hours per day, seven days a week.

305.    Upon information and belief, CHC Services and HMR Funding knew that the amount being charged to Ms. Chenoweth for the services being rendered was not reasonable and was not similar to charges of other providers as set forth in the Assignment Agreement.

306.    These actions by CHC Services and HMR Funding were in breach of their agreements.

307.    As a result of the breach, Ms. Chenoweth has been damaged in an amount to be determined at trial.

308.    Ms. Chenoweth is entitled to judgment from and against CHC Services and HMR Funding in an amount to be determined at trial.

309.    Further, Ms. Chenoweth is entitled to attorney's fees and cost as a result of the breach of contract by CHC Services and HMR Funding.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

## XII.   EIGHTH CAUSE OF ACTION: VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT, CHAPTER 19.86 RCW

310.    Plaintiff incorporates and re-alleges the allegations above as if fully set forth herein.

311.    HMR Funding, Chase, Guedri, MKL Services and CHC Services devised a scheme to deceive and defraud the Chenoweths whereby MKL Services and CHC Services submitted fraudulent invoices to HMR Funding which overstated the medical and home health services provided or overstated the value of the medical services or both as provided Ms. Chenoweth.

312.    In furtherance of this scheme, HMR Funding would then only pay a small percentage of the fraudulent invoices while claiming that it had paid the full amount in its Notice of Lien to the Chenoweths.

313.    This deceptive scheme was further perpetrated on the Chenoweths by MKL Services and CHC Services by each of them referring any inquiry regarding billing or charges for services to HMR Funding.  Also, both MKL Services and CHC Services were prohibited by their agreement with HMR Funding from disclosing any of these facts to anyone without the permission of HMR Funding.

314.    The actions of MKL Services, CHC Services and HMR Funding were a fraudulent and deceptive scheme to deprive the Chenoweths of funds which resulted in damages to them as well as the type of scheme with capacity to injure others similarly situated to Ms. Chenoweth.

315.    Defendants HMR Funding and TransAmerica entered into an agreement to defraud the Chenoweths.  Pursuant to this Agreement, TransAmerica submitted fraudulent and deceptive invoices to HMR Funding in which TransAmerica stated that it had provided medical or neuro-rehabilitation services to the Chenoweths which it did not.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

316. Assuming arguendo, that TransAmerica did provide any services to the Chenoweths, there was no agreement to provide services and the alleged provider of such services is not authorized to, licensed to or otherwise qualified to provide such alleged services. Therefore, payment of this bill by HMR Funding of any sum to TransAmerica (which is an entity owned by the same persons as the principals in HMR Funding) simply continues their false and fraudulent scheme to deprive the Chenoweths of funds by participating in fraud with the intent to damage them and which had the capacity to injure others similarly situated to the Chenoweths.

317. HMR Funding solicits persons who have been injured and who need medical care but have inadequate health insurance coverage or funds during the time that the injured persons are seeking compensation for their injuries through judicial means.

318. HMR Funding advertises that upon it agreeing to fund the care of the injured person with a medical service provider (such as MKL Services, CHC Services and TransAmerica), HMR Funding will only be paid in the event of a recovery by the individual from the pending litigation. Further, HMR Funding advertises and tells the parties who use HMR Funding that it will monitor the case to ensure that medical service costs are competitive. Attached hereto and incorporated by reference herein as **Exhibit G** is a true and correct copy of Case Strategies for Personal Injury Cases where Plaintiff has Inadequate Health Insurance or is Denied Coverage by Dean Chase of HMR Funding.

319. As a result, numerous individuals in Washington are likely to use the services provided by MKL Services, CHC Services and TransAmerica and HMR Funding. There is the potential for repetition of the identical overbilling scheme upon other injured Washington residents.

320. The Assignment Agreements between Ms. Chenoweth and MKL Services, CHC Services MK and TransAmerica specifically states that the Chenoweths are liable to the medical providers for payment of the services provided.

**THE SULLIVAN LAW FIRM**
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 60 OF 72

321.  This is completely contrary to the Defendants' representations that HMR's funding to pay medical bills was "non-recourse". In particular, Defendant Chase states in his promotional memo "Case Strategies for Personal Injury Cases Where Plaintiff has Inadequate Health Insurance or is Denied Coverage" that proper litigation funding should only be "non-recourse."

322.  Defendants Chase and Guedri committed deceptive practices in violation of the Washington CPA by falsely stating and approving the bills and the attempt to collect the sums totaling in excess of $839,699.96 from the Chenoweths or their funds.

323.  Defendants Guedri and Chase were the architects of the scheme to defraud the Chenoweths, and both Guedri and Chase intentionally directed, authorized and participated in the scheme so as to profit by collecting fraudulent sums from the Chenoweths.

324.  Upon information and belief, Defendants Guedri and Chase have conducted, and are conducting the same or similar schemes to defraud other personal injury Plaintiffs in the State of Washington and in numerous other states.

325.  HMR Funding in its Notice of Lien states that it paid the total amount set forth on the Notice in the amount of $839,699.96 to the medical providers although it only paid 38 percent to 40 percent of the claimed amount.

326.  These acts and practices constitute unfair and deceptive acts and practices in a trade or business in the State of Washington.

327.  Defendants' acts and practices violated the Consumer Loan Act, RCW 31.04.010 *et seq.*, because Defendants made loans or extended credit to Plaintiff but were not licensed as required by this act. This violation constitutes a per se violation of the CPA, pursuant to RCW 31.04.208.

328.  Defendants' acts and practices violated the Washington usury statutes, RCW 19.52 *et seq.* because Defendants made loans to Plaintiff at interest rates in excess of

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 61 OF 72

1  the legal rate. This violation constitutes a per se violation of the CPA, pursuant to

2  RCW 19.52.036.

3      329.   As a result of the above actions and as otherwise set forth in this Complaint,

4  Defendants have violated RCW 19.86.020 and 19.86.090.

5      330.   Plaintiffs have been damaged in an amount to be determined at trial as a re-

6  sult of Defendants' unfair and deceptive acts and practices.

7      331.   Plaintiffs are entitled to a judgment from and against Defendants in an

8  amount to be proved at trial.

9      332.   Further, Plaintiff are entitled to punitive damages and attorney's fees and

10  costs as set forth in RCW 19.86 090.

11  **XIII.   NINTH CAUSE OF ACTION: OUTRAGE/INTENTIONAL INFLICTION OF**
        **EMOTIONAL DISTRESS**

12

13      333.   Plaintiff incorporates and re-alleges the allegations above as if fully set forth

   herein.

14

15      334.   HMR Funding, MKL Services and CHC Services intentionally devised a

16  scheme to deceive and defraud the Chenoweths whereby MKL Services and CHC Services

17  submitted fraudulent invoices to HMR Funding which overstated the medical and home

18  health services provided or overstated the value of the medical services or both which were

   provided to Ms. Chenoweth.

19

20      335.   In furtherance of this scheme, HMR Funding would then only pay a small

21  percentage of the fraudulent invoices while claiming that it had paid the full amount in its

22  Notice of Lien to the Chenoweths which deprived the Chenoweths of funds needed for the

23  continued care of Ms. Chenoweth.

24

25

26

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

336.    Defendants HMR Funding and TransAmerica intentionally devised a scheme to defraud the Chenoweths whereby TransAmerica submitted fraudulent and deceptive invoices to HMR Funding which stated that it had provided medical or neuro-rehabilitation services to the Chenoweths which it did not.

337.    Assuming arguendo, that TransAmerica did provide any services to the Chenoweths, there was no agreement to provide services and the alleged provider of such services is not authorized to, licensed to or otherwise qualified to provide such alleged services.  Therefore, payment of this bill by HMR Funding for any sum to TransAmerica to any entity owned by the same persons who are the principals in HMR Funding simply continues their false and fraudulent scheme to deprive the Chenoweths of funds needed for the continued care of Ms. Chenoweth.

338.    Defendants knew or should have known that Ms. Chenoweth was rendered a quadriplegic as a result of a crash while riding a bicycle and was involved in a lawsuit due to the injuries she sustained in the crash.

339.    Defendants knew or should have known that Ms. Chenoweth would need long term care as a result of the injuries which would cost the Plaintiffs an enormous amount of money to provide such care.

340.    Defendants knew or should have known that Ms. Chenoweth was having difficulty in adjusting to her physical limitations and her necessity to depend on others to perform daily functions for her and the cost of her care which would continue through the remainder of her life.

341.    As a result of Defendants' scheme to substantially escalate and overcharge Plaintiffs for the services provided to Ms. Chenoweth (without any justification on the part of the Defendants except greed and without any regard to distress on Ms. Chenoweth), the Plaintiffs had to settle their lawsuit for a fraction of the amount that they were seeking at trial against the tortfeasor.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504

342. Defendants' scheme intentionally concealed the agreements between the Defendants and the method and manner in which charges and payments were being made so that the Plaintiffs did not discover the scheme until it was too late to protect their interests in the litigation.

343. This deceptive scheme by the Defendants not only interfered with Plaintiffs' property interest in the funds from the litigation needed to provide for Ms. Chenoweth's care but it caused emotional distress to Ms. Chenoweth in that she will have less money available to provide for her necessary medical care in the future (a worry she has had since the crash).

344. As such, the actions of MKL Services, CHC Services, TransAmerica and HMR Funding were willful, intentional, and outrageous, and shock the conscience.

345. Plaintiffs have been damaged in an amount to be determined at trial.

346. Plaintiffs are entitled to a judgment from and against Defendants in an amount to be determined at trial.

## XIV.   TENTH CAUSE OF ACTION:  UNJUST ENRICHMENT

347. Plaintiff incorporates and re-alleges the allegations above as if fully set forth herein.

348. This Cause of Action is against Defendants HMR Funding, MKL Services, CHC Services and TransAmerica (the "Cause of Action VII Defendants").

349. HMR Funding received a benefit when it purchased accounts receivable from MKL Services regarding medical services MKL Services had provided, and would provide in the future, to Ms. Chenoweth.

350. HMR Funding received a benefit when it e-mailed Lawrence Kahn and Lauren Bauer a Notice of Lien date August 5, 2016 for $839,699.96 against Ms. Chenoweth which fraudulently overstated the amount of medical services that Ms. Chenoweth had received from medical providers, and fraudulently overstated the amount that HMR Funding had paid the medical providers on behalf of Ms. Chenoweth.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 64 OF 72

351.    HMR Funding received a benefit when it fraudulently claimed in its Notice of Lien dated August 5, 2016 that MKL Services had provided $94,442.50 worth of medical services to Ms. Chenoweth when HMR Funding only paid MKL Services $37,777.00 for accounts receivable.

352.    HMR Funding received a benefit when it fraudulently claimed in its Notice of Lien dated August 5, 2016 that CHC Services had provided $668,497.00 worth of medical services to Ms. Chenoweth when HMR Funding only paid CHC Services $254,028.86 for accounts receivable.

353.    HMR Funding received a benefit when it fraudulently claimed in its Notice of Lien dated August 5, 2015 that TransAmerica had provided $49,902.01 worth of services to Ms. Chenoweth.

354.    HMR received those benefits at the expense of the Chenoweths.

355.    It would be unjust for HMR Funding to retain those benefits because HMR Funding conducted a scheme to defraud Ms. Chenoweth for a fraudulent value of medical services that was substantially higher than the value of the medical services that she received from medical providers; it would be unjust to force Ms. Chenoweth to pay an inflated value for medical services she received, as well as unjust to make her pay for medical services she did not receive.

356.    MKL Services received a benefit when it fraudulently over-billed Ms. Chenoweth for medical services it provided her and HMR Funding paid MKL Services for fraudulent medical services.

357.    MKL Services received that benefit at the expense of the Chenoweths.

358.    It would be unjust for MKL Services to retain those benefits because MKL Services conducted a scheme to defraud Ms. Chenoweth for a fraudulent value of medical services that was substantially higher than the value of the medical services that she received

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

from MKL Services; it would be unjust to force Ms. Chenoweth to pay an inflated value for medical services she received.

359.    CHC Services received a benefit when it fraudulently over-billed Ms. Chenoweth for medical services it provided her and HMR Funding paid CHC Services for fraudulent medical services.

360.    CHC Services received that benefit at the expense of the Chenoweths.

361.    It would be unjust for CHC Services to retain that benefit because CHC Services conducted a scheme to defraud Ms. Chenoweth for a fraudulent value of medical services that was substantially higher than the value of the medical services that she received from CHC Services; it would be unjust to force Ms. Chenoweth to pay an inflated value for medical services she received.

362.    TransAmerica received a benefit when it fraudulently over-billed Ms. Chenoweth for services that it provided her and submitted fraudulent invoices to HMR Funding; TransAmerica also received a benefit when it submitted a claim for payment for a medical bed to HMR Funding for $19,902.01 when the bed was returned and TransAmerica agreed to credit the amount of the bed back to Ms. Chenoweth.

363.    TransAmerica received those benefits at the expense of the Chenoweths.

364.    It would be unjust for TransAmerica to retain those benefits because TransAmerica conducted a scheme to defraud Ms. Chenoweth for a fraudulent value of medical services that was substantially higher than the value of the medical services that she received from TransAmerica; it would also be unjust for TransAmerica Medical Assistance to retain the benefit of the value of the medical bed when the bed was returned and TransAmerica agreed to credit the value of the bed to Ms. Chenoweth.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

**XV.   ELEVENTH CAUSE OF ACTION:  VIOLATIONS OF WASHINGTON CRIMINAL PROFITEERING ACT, RCW 9A.62.010 *ET SEQ.***

365.   Plaintiff incorporates and re-alleges the allegations above as if fully set forth herein.

366.   Plaintiffs are residents of the State of Washington and Defendants all committed acts in violation of the Washington Criminal Profiteering Act, RCW 9A.82.010 *et seq.* (the "Act") in this state.

367.   Defendants violated various provisions of the Act.

368.   Defendants violated RCW 9A.92.020 because Defendants knowingly made an extortionate extension of credit to Plaintiff.  Defendants knew that Plaintiff Ms. Chenoweth was profoundly disabled from the bicycle crash and desperately needed funding to pay her medical care.  The following factors listed in RCW 9A.82.020 are present in Defendants' extension of credit to Plaintiff:

a.   The repayment of the extension of credit was unenforceable at the time the extension of credit was made in the courts of the state of Washington because the effective interest rate charged by HMR Funding substantially exceeded the legal interest rate established under RCW 19.52 *et seq.*;

b.   The extension of credit was made at a rate of interest in excess of an annual interest rate of 40 percent;

c.   The creditor HMR Funding intended the debtor Ms. Chenoweth to believe that failure to comply with the terms of the extension of credit would be enforced by extortionate means, to wit, the filing of and execution upon Ms. Chenoweth's personal injury suit recovery in the sum of the inflated invoice amounts; and

d.   The total of the extensions of credit exceeded $100.

369.   Defendants violated RCW 9A.82.045 because Defendants knowingly seek to collect an unlawful debt, to wit: Defendants have asserted a Lien in the amount of their

**THE SULLIVAN LAW FIRM**
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

Complaint for Damages and Injunctive Relief - 67 of 72

inflated invoices in the sum of $839,699.96 against the settlement proceeds of Ms. Cheno-weth's personal injury suit and have threatened to take legal action in the event that Ms. Chenoweth does not pay this sum. As alleged above, the debt is unlawful because (1) the amount which Defendants seek to collect is the product of fraud, and (2) the debt includes an illegal interest charge which violates Washington's usury laws, RCW 19.52 *et seq.*

370.    Defendants violated RCW 9A.82.060 because they have intentionally organized, managed, directed, supervised, or financed any three persons with the intent to engage in a pattern of criminal profiteering activity as defined in the Act.

371.    Plaintiffs have sustained injury to their business and property by the above acts committed by Defendants in violation of the Act.

372.    As a result, Plaintiffs are entitled to and seek recovery of their damages and the costs of suit, including reasonable investigative and attorney's fees as provided for in RCW 9A.82.100(1)(a). Further, Plaintiffs seek imposition of a civil penalty in the amount of $250,000 as provided for in RCW 9A.82.100(1)(d). Plaintiffs also seek an order to protect other Washington residents from Defendants' actions, including: (1) that Defendants divest themselves of any interest, direct or indirect, in this or any similar enterprise; (2) the imposition of reasonable restrictions on the Defendants' future activities; (3) and, ordering the dissolution or reorganization of the enterprise at issue in this action, all as provided for under RCW 9A.82.100(4).

## XVI.   TWELFTH CAUSE OF ACTION:  VIOLATION OF WASHINGTON CONSUMER LOAN ACT, RCW 31.04.010 *ET SEQ.*

373.    Plaintiff incorporates and re-alleges the allegations above as if fully set forth herein.

374.    Plaintiffs are Washington residents.  Defendants extended a consumer loan, i.e. an extension of credit, to Plaintiffs within the State of Washington in the financing arrangements for Plaintiff Ms. Chenoweth's medical care alleged in detail above.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 68 OF 72

375.    Defendants violated the Washington Consumer Loan Act, RCW 31.04.010 *et seq.* because, as set forth in RCW 31.04.035(1), Defendants: (1) made a loan of money or extended credit to Plaintiffs, (2) without first obtaining a license in accordance with the Consumer Loan Act.

376.    As a result, Defendants must return all fees or interest charged to the borrower, Ms. Chenoweth, as provided for in RCW 31.04.035(3).

377.    Defendants' violation of RCW 31.04.010 *et seq.* constitutes a per se violation of the Washington Consumer Protection Act.  RCW 31.04.208 provides that any violation of the Consumer Loan Act is an unfair or deceptive act or practice in violation of RCW 19.86.020.

## XVII. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs request that this Court enter judgment against the First Cause of Action Defendant(s) as follows:

a.      For a judgment in favor of all of the Plaintiffs from and against the First Cause of Action Defendants, HMR Funding, Chase, Guedri, MKL Services, CHC Services and TransAmerica, jointly and severally, for compensatory damages in an for the injuries and damages sustained by the Plaintiff Ms. Chenoweth as set forth in the Causes of Action above;

b.      That all damages awarded pursuant to the First Cause of Action be trebled pursuant to applicable law;

c.      For their costs and attorney's fees pursuant to applicable law;

d.      For the dismissal of the HMR lien;

e.      For an injunction preventing First Cause of Action Defendants from filing additional liens against the Chenoweths;

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504

f.      For a judgment in favor of Plaintiff Ms. Chenoweth from and against the First Cause of Action Defendants, MKL Services and CHC Services, for compensatory damages in an amount to be proved at trial, for the injuries and damages sustained by the Plaintiff Ms. Chenoweth as set forth in the Causes of Action above;

g.      For a judgment in favor of Plaintiff Mr. Chenoweth from and against the Second Cause of Action Defendants, MKL Services and CHC Services, for compensatory damages in an amount to be proved at trial, for the injuries and damages sustained by Plaintiff Mr. Chenoweth as set forth in the Causes of Action above;

h.      For treble damages;

i.      For their costs and attorney's fees;

j.      For the dismissal of the HMR lien;

k.      For an injunction preventing Second Cause of Action defendants from filing additional liens against the Chenoweths;

l.      For a judgment in favor of Plaintiff Ms. Chenoweth from and against the Third Cause of Action Defendants, HMR Funding, Chase, MKL Services and CHC Services, for compensatory damages in an amount to be proved at trial, for the injuries and damages sustained by the Plaintiff Ms. Chenoweth as set forth in the Causes of Action above;

m.      For a judgment in favor of Plaintiff Mr. Chenoweth from and against the Third Cause of Action Defendants, HMR Funding, Chase, MKL Services and CHC Services, for compensatory damages in an amount to be proved at trial, for the injuries and damages sustained by the Plaintiff Mr. Chenoweth as set forth in the First Cause of Action above;

n.      For treble damages;

o.      For their costs and attorney's fees;

p.      For the dismissal of the HMR Funding lien;

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504

q.      For an injunction preventing Third Cause of Action defendants from filing additional liens against the Chenoweths;

r.      For a judgment against all Defendants , jointly and severally, for the damages, harm and injury to Plaintiffs on Causes of Action Four to Twelve;

s.      For a judgment against all Defendants for the actual damages, harm and injury to Plaintiffs, a trebling of such damages, and their attorney's fees and costs, for their violations of the Washington Consumer Protection Act, RCW 19.86.090;

t.      For an injunction against all Defendants pursuant to the Washington Consumer Protection Act, RCW 19.86.090, prohibiting Defendants from engaging in the practices identified in this action in the state of Washington and thereby harming other Washington residents;

u.      For recovery of damages in favor of Plaintiffs against Defendants for violations of RCW 9A.82.010 *et seq.*;

v.      For a civil penalty in the amount of $250,000;

w.      For costs and attorney's fees';

x.      For the equitable relief identified in RCW 9A.82.100(4) as alleged above;

y.      For forfeiture of any interest and fees for Defendants' violations of RCW 31.04.010 *et seq.*

z.      For such other and further relief as the Court deems fair, just, and equitable.

**PLAINTIFFS DEMAND TRIAL BY JURY.**

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504

1    DATED this 16th day of December, 2016.

2                         THE SULLIVAN LAW FIRM

3
         By: _____
4            Kevin P. Sullivan, WSBA #: 11987
5            Patrick J. Sullivan, WSBA #: 50230
             701 Fifth Avenue Suite 4600
             Seattle, WA 98104
6            Phone: (206) 903-0504
7            Facsimile: (206) 260-2060
             K.Sullivan@SullivanLawFirm.org
8            P.Sullivan@SullivanLawFirm.org

9                         LYONS & CONE, P.L.C.

10
         By: /s/ Jim Lyons
11           Jim Lyons (Pro Hac Vice application to be filed)
             P. O. Box 7044
12           Jonesboro, AR 72403
             Phone: (870) 972-5440
13           Facsimile: (870) 972-1270
             JLyons@LecLaw.com
14
             Attorneys for Plaintiffs
15

16

17

18

19

20

21

22

23

24

25

26

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 72 OF 72