



# Lien and Receivables Purchase and Assignment Agreement

This Lien and Receivables Purchase and Assignment Agreement ("Agreement") is entered into as of the Effective Date (as such term is defined on the signature page attached hereto) by and between HMR Funding, LLC, a Delaware limited liability company with a principal office located at 9211 Forest Hill Avenue, Suite 101, Richmond, VA 23235 (referred to herein as "HMRF"), and the party set forth on the signature page attached hereto (referred to herein as "Medical Provider").

## RECITALS

WHEREAS, Medical Provider has rendered and will continue to render medical services to patients who are unable to pay the costs and expenses associated with such medical services;

WHEREAS, some of Medical Provider's patients are pursuing claims for compensation related to personal injuries allegedly sustained as a result of the fault or negligence of third parties;

WHEREAS, HMRF directly and through its Affiliates (as defined below), is engaged in the business of purchasing accounts receivable from certain medical providers related to personal injury claims; and

WHEREAS, Medical Provider and HMRF desire to establish a contractual relationship whereby HMRF and its Affiliates may agree now, and in the future, in writing, to purchase certain accounts receivable from Medical Provider arising out of medical services provided to Patients with pending personal injury claims.

NOW THEREFORE, in consideration of the mutual covenants and promises contained herein, HMRF and Medical Provider agree as follows:

1. **Agreement to Purchase Accounts Receivable; Definition of Liens; Affiliate Adoption.**

    (a.) In the event Medical Provider and HMRF mutually agree that HMRF will purchase from Medical Provider certain accounts receivables, HMRF and the Provider will prepare and execute an accounts receivable purchase order in the form attached hereto as Schedule 1 ("Purchase Order"). With respect to each Purchase Order, the term (i) "Patient" shall mean the patient identified on the applicable Purchase Order; and (ii) "Receivables" shall mean the receivables identified on the applicable Purchase Order. Along with the first Purchase Order executed hereunder for each Patient, Medical Provider will provide executed copies of the Required Documents (as defined in Section 5). For purposes of this Agreement, the term "Liens" means all liens associated with the Receivables purchased by HMRF hereunder, which shall be evidenced by the Assignment Agreement in the form attached ("Assignment Agreement") executed by both the applicable Patient and Medical Provider. No Purchase Order will be valid unless signed by the Medical Provider and HMRF.

(b.) Affiliates (as defined below) of HMRF may purchase Receivables from Medical Provider pursuant to the terms and conditions of this Agreement and in accordance with the process set forth in Section 1(a) above, provided that each such Affiliate enters into a Purchase Order (along with any other forms required Pursuant to Section 1(a) and/or Section 5 hereof) for such Receivables. Any Affiliate that enters into such a Purchase Order with Medical Provider will be deemed to be "HMRF" hereunder for purposes thereof; provided that such Purchase Order, together with this Agreement, will constitute a separate contract solely between Medical Provider and the Affiliate with respect to Receivables purchased by such Affiliate, and Medical Provider will look solely to such Affiliate (and not to HMRF) for satisfaction of any liability arising under or relating to the relationship between Medical Provider and such Affiliate, including without limitation, any liability arising under or relating to the purchase of Receivables by such Affiliate. For purposes of this Agreement, the term "Affiliate" means any entity that directly or indirectly (through one or more intermediaries) controls, is controlled by, or is under common control with HMRF.

2. **Assignment of Receivables.** Subject to the terms of this Agreement, Medical Provider hereby assigns, sells, transfers, conveys and delivers to HMRF all of its right, title and interest in and to the Receivables and Lien(s) that correspond to the applicable Purchase Order. In exchange for the assignment of the Receivables and Lien(s) by Medical Provider, HMRF agrees to pay to Medical Provider the amounts set forth in Section 3 hereof.

3. **Reimbursement of Medical Provider.** HMRF will pay Medical Provider an amount equal to (i) ~~Thirty-Five percent (35%)~~ 40% [initials] (the "Percentage"); multiplied by (ii) the Full Bill Charges (as such term is defined on each Purchase Order, with respect to each service ("Service") listed on each Purchase Order) (such amount, the "Reimbursement"). Reimbursements will be paid to Medical Provider by HMRF within thirty (30) days after HMRF receives all Required Documents ("Deliverable Date"). Medical Provider is not obligated to submit all accounts receivable associated with the personal injury claim to HMRF for payment and may, at its election, retain some or all of such receivables ("Other Receivables"), provided that Medical Provider's reimbursement for such Other Receivables by Patient or any third party payor is junior in right of payment to HMRF's right of payment with respect to the Receivables and Liens. In the event HMRF pays the Reimbursement within fifteen (15) days of the Deliverable Date, HMRF shall be entitled to a one percent (1%) discount, and HMRF will make payment to Medical Provider in an amount equal to ninety-nine percent (99%) of the Reimbursement amount.

4. **Billing Practices of Medical Provider.** With respect to the Services, Medical Provider shall bill the Patient as follows: (i) in the event Medical Provider files its billing schedules with applicable state government authorities, Medical Provider will bill the Patient for the Services in the amount set forth in such billing schedules; (ii) in the event Medical Provider does not file its billing schedules with applicable state government authorities, Medical Provider will bill all usual and customary charges to the Patient. In no event will Medical Provider discount (a) any bill or invoice provided to the Patient associated with the Services; or (b) the Lien amount. All such bills and/or invoices will reflect that all amounts are still owed by the Patient. Bills and invoices sent to Patients will not reflect HMRF's purchase of the Receivables in any manner, including without limitation, listing them as payments, offsets, contractual write-offs, or adjustments. For the avoidance of doubt, the amount of the Lien shall be equal to the gross billed charges for the Services.

5. **Required Documents.** With respect to the first Purchase Order executed hereunder for each Patient and/or with respect to the first Purchase Order executed hereunder by an Affiliate for an

existing Patient, Medical Provider shall deliver to HMRF (i) the executed Assignment Agreement in the form attached, (ii) an HCFA Form UB-92 or other similar billing instrument indicating full bill charges related to the services provided to Patient, and (iii) medical records for services rendered (together with the Assignment Agreement and Billing Instrument the "Required Documents"). With respect to each Purchase Order executed hereunder (i.e. regardless of whether such Purchase Order relates to a Patient covered by an existing Purchase Order), Medical Provider shall deliver to HMRF an HCFA Form UB-04, UB-92, 1500 or other similar billing instrument indicating full bill charges related to the services provided to Patient. HMRF's payment obligations pursuant to Section 3 hereof are expressly conditioned on its receipt of the Required Documents.

6. **Cooperation.** In addition to executing and delivering all required instruments and notices, Medical Provider covenants and promises that following its execution and delivery of this Agreement, it will:

    (a) cooperate with all reasonable requests of HMRF to advise Patient and Patient's attorneys as to the transfer and assignment of such Receivables to HMRF in order to ensure that payment is directly remitted to HMRF on a timely basis. Upon request, Medical Provider will deliver to HMRF or, upon the request of HMRF, the attorney for Patient, any then existing documents necessary to enforce the collections of the Receivables, including without limitation, bills, medical reports, payment records, copies of the Assignment Agreement and/or correspondence;

    (b) immediately contact HMRF and advise HMRF as to the receipt of any check or other form of payment received by Medical Provider on account of the Receivables owed by patients, and as instructed by HMRF, endorse over, deliver and/or transfer such payment to HMRF, or its designee;

    (c) immediately forward to HMRF any correspondence, or notice relating to the Receivables, immediately report to HMRF any communication in any other form (e.g. mail, telephone, email or facsimile transmissions), and Medical Provider, shall advise the communicating party to communicate directly and solely with HMRF; and

    (d) it shall not grant any lien, encumbrance, sale or assignment of the Receivables and/or Lien(s) to any third party.

7. **Representations and Warranties of Medical Provider**: Medical Provider represents and warrants as follows:

    (a) There are no claims, actions, suits, or judgments pending against Medical Provider related to the Services and/or Patient;

    (b) There have been no disciplinary actions brought against Medical Provider;

    (c) There have been no allegations or claims of improper billing, false billing or insurance fraud brought against Medical Provider;

    (d) The Receivables and Liens to be transferred under this agreement are valid, in good standing, and are not subject to any liens or encumbrances;

  (e) All bills and invoices which were the basis for the Receivables are true and accurate in all respects and were generated with usual and customary amounts for the Services;

  (f) All Services rendered and billed were reasonable (with respect to the applicable Patient) and related to injuries sustained in the accidents or other occurrences which are the basis of claims or litigation, and the proceeds from which are subject to the Liens securing the Receivables;

  (g) Medical Provider has not received payment from any third party for the Receivables;

  (h) Medical Provider has made no statement or representation to HMRF prior to the execution and delivery of the Agreement which was misleading or untrue as to any material fact, or omitted or failed to disclose any material fact related to this Agreement;

  (i) This Agreement was duly authorized by Medical Provider;

  (j) Medical Provider is not bound by any existing agreements, arrangements or options restricting in any manner the transfer of any rights or interests in the Receivables; and

  (k) Medical Provider is not a party to any Agreement which would in any way impair or limit its Power to enter into this Agreement.

8. **Indemnification**. Medical Provider shall indemnify, defend and hold harmless HMRF and its affiliates and its and their officers, directors, employees and agents from and against any and all liabilities, judgments, damages, costs and expenses (including reasonable attorneys' fees) arising out of or related to (a) any breach by Medical Provider of the representations and warranties set forth herein; and/or (b) any claim brought by Patient related to the Services.

9. **Attorney's Fees**. If the event a dispute arises under this Agreement, the prevailing party in such dispute will be entitled to recover from the other party reasonable attorney's fees incurred in connection with such dispute.

10. **Severability of Provisions**. The provisions contained in this Agreement will be deemed to be severable, and the invalidity of any provision will not affect the validity or enforceability of any other provision.

11. **Binding Effect.** All of the terms and provisions of this Agreement and its associated Exhibits and Schedules are binding upon, inure to the benefit of, and are enforceable by HMRF and the Medical Provider and their respective administrators, executors, legal representatives, heirs, successors and permitted assigns.

12. **Waiver**. The failure of either HMRF or the Medical Provider to insist upon the performance of any of the terms and conditions of this Agreement, or the waiver of any breach of the terms and conditions of this Agreement, shall not be construed as thereafter waiving any such terms and conditions, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

13. **Headings**. The headings contained in this Agreement are for convenience only and do not limit or otherwise affect the meaning or interpretations of this Agreement.

14. **Counterparts**. This Agreement may be executed in any number of counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute the Agreement. Delivery of an executed counterpart of this Agreement by facsimile transmission shall be equally as effective as delivery of an original executed counterpart of this Agreement.

15. **Choice of Law & Venue.** The validity, interpretation, and performance of this Agreement shall be controlled by and construed under the laws of the Commonwealth of Virginia.

16. **Confidentiality.** Each of HMRF and the Medical Provider may be given access to the other party's Confidential Information (as defined below) hereunder. "Confidential Information" shall mean, the terms of this Agreement, and the non-public business and technical information of the disclosing party. Medical Provider shall not disclose to any third party, including without limitation lawyers or other professionals, the terms of this Agreement without the prior written consent of HMRF. Neither HMRF nor the Medical Provider will (a) disclose the Confidential Information of the other party to any third party; or (b) use the Confidential Information of the other party except as necessary to perform its obligations hereunder. Notwithstanding the foregoing, the receiving party may disclose the Confidential Information of the disclosing party pursuant to a valid subpoena or court order, provided that the receiving party notifies the disclosing party in writing advance of such disclosure, provided that such notice is permitted pursuant to applicable law. Confidential Information will not include information which: (a) is or becomes available to the general public through no fault of the party receiving the Confidential Information; or (b) is rightfully received by the receiving party from a third party without a duty of confidentiality. Medical Provider acknowledges and agrees that (i) in connection with this Agreement, HMRF may refer potential patients in need of health care services to Medical Provider with the intention of purchasing the receivables associated with such medical services from Medical Provider pursuant to the terms of this Agreement; and (ii) Medical Provider shall not circumvent HMRF to receive payment from such potential patients for such medical services and/or circumvent HMRF to secure a lien in connection with such receivables. The provisions of this Section 16 shall survive termination or expiration of this Agreement for a period of three (3) years.

17. **HIPAA**. HMRF and Medical Provider acknowledge that each is a Business Associate and Covered Entity, respectively, as defined in the regulations promulgated at 45 CFR, Parts 160, 162, 164 and 614 under the Health Insurance Portability and Accountability Act of 1996, as subsequently amended ("HIPAA") and that they will comply with such regulations on or before the date that compliance is required by regulations. All capitalized terms in this section not defined herein shall have the meaning as set forth in 45 CFR, Part 160 and 164. Nothing in this Agreement will be construed to require HMRF or the Medical Provider to use or disclose Protected Health Information ("PHI") other than in accordance with the Privacy Standards and applicable state law. Each of HMRF and the Medical Provider agrees that only the minimum necessary PHI will be requested to accomplish the intended purpose of the request. Each of HMRF and the Medical Provider represents that any Business Associate that requests or receives PHI on behalf of such party shall have entered into an agreement with such party that contains the written assurances required by HIPAA, subject to any modifications required by state law.

18. **Assignment**. Subject to 1(b), this Agreement shall be binding upon and inure to the benefit of HMRF and the Medical Provider and their respective successors and assigns.

19. **Entire Agreement.** This Agreement represents the entire understanding and agreement between HMRF and the Medical Provider as to the subject matter herein and supersedes all other negotiations, understandings, and representations made by and between HMRF and the Medical Provider. The terms of this Agreement shall be construed in order to give full effect to the provisions contained herein and any ambiguity in the terms of this Agreement shall not be construed against the maker hereof. This Agreement may not be amended or modified except in a writing signed by HMRF and the Medical Provider.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date set forth below.

Effective Date: November 24, 2014

Medical Provider: DBA Bright Star Care North Seattle  MKL Services LLC

Federal ID # 45-4791744

Address of Medical Provider:

Telephone Number of Medical Provider: 206-777-1190   Facsimile: 206-420-3835

**MEDICAL PROVIDER:**

By: _____

**HMR FUNDING, LLC:**

By: _____
Mark G. Guedri, Chief Executive Officer